**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald ROGERS a/k/a New York,
Defendant–Appellant.**

No. 88–2926.

United States Court of Appeals,
Tenth Circuit.

March 26, 1990.

D. Blair Watson, Asst. U.S. Atty. (Robert E. Mydans, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Joseph L. Wells, Oklahoma City, Okl., for defendant-appellant.

Before SEYMOUR and ANDERSON, Circuit Judges, and KANE,[*] District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Appellant, Donald Rogers, was found guilty by a jury and convicted of one count each of engaging in racketeering activities and conspiracy to participate in such activities in violation of 18 U.S.C. §§ 1961, 1962(c) and (d), possession of heroin with intent to distribute, conspiracy to possess heroin with intent to distribute, and interstate travel to facilitate the conspiracy in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, 18 U.S.C. § 1952(a)(3), and 18 U.S.C.

§ 2. The district court determined the sentencing guideline[1] range for the most serious offenses to be 151 to 188 months, and sentenced Rogers to concurrent prison terms of 156 months for four of the counts and a concurrent term of 60 months on the remaining count, followed by five years' supervised release.

On appeal, Rogers contends that his Fifth Amendment privilege against self-incrimination was violated when he was not given a *Miranda*[2] warning at the beginning of or during his presentence interview by a probation officer following trial. He also contends that his right to a speedy trial was violated, and that the district court abused its discretion when it denied Rogers' motion for severance. We affirm.

## I. ADMISSIONS DURING PRESENTENCE INTERVIEW

Following Rogers' trial, the court ordered the U.S. Probation Office to prepare a presentence report, and briefly discussed that process in advance with Rogers' counsel, in Rogers' presence, after the jury was discharged. *See* R.Vol. XV at 1078. U.S. Probation Officer Derald T. Riggs prepared the report, and interviewed Rogers as a routine part of the process. During the interview Rogers admitted to trafficking in twenty-four ounces of heroin within the charged enterprise, rather than the five ounces specified in the indictment against him. R.Vol. XVI at 2, 10–12, 17; R.Supp. Vol. II, Tab 520, Count 27. There is a dispute as to what quantity was proved at trial. According to Rogers, the only reason he admitted to the twenty-four ounces was his belief that the admission was required as part of his acceptance of responsibility in order to obtain the two-point reduction in his base offense level allowed by the U.S.S.G. § 3E1.1.[3]

---

[*] Hon. John L. Kane, Jr., Senior Judge, U.S. District Court for the District of Colorado, sitting by designation.

1. United States Sentencing Commission, *Guidelines Manual*, §§ 1B1.1–7A1.4 (Nov.1989) [hereinafter U.S.S.G.].

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. That section provides: ·
"(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.

In his initial draft of the presentence report, Riggs attributed to Rogers the entire thirty kilograms of heroin possessed and distributed by the drug ring as a whole, and calculated a base offense level based on that amount. When Rogers' counsel objected, *see* R.Vol. XVI at 2–4, Riggs revised the report and calculated the base offense level using the twenty-four ounces to which Rogers had admitted.[4] The quantity was multiplied by seven to reflect the number of times it could be "cut" for street distribution.[5] The probation officer's use of the twenty-four ounces to which Rogers admitted in his interview, instead of the five ounces mentioned at one part of the indictment potentially increased Rogers' sentence by four years, even after the two-point downward adjustment in the offense level which Rogers was allowed for accepting responsibility.[6] The district court accepted the classifications recommended in the presentence report and imposed them for sentencing purposes.

■ Rogers now contends that his Fifth Amendment privilege against self-incrimination was violated in this process, in two ways: first, by a perceived requirement under § 3E1.1 that he further incriminate himself, or be "punished" by not receiving the two-point reduction, and second, by the probation officer's failure to give him a *Miranda* warning regarding the consequences of any admissions. He states:

"For the sake of receiving a reduction of two levels, the Appellant incriminated himself from a base level of 24 to a base level of 32. Thus Appellant unwittingly placed himself in a 'damned-if-you-do and damned-if-you-don't' position. It is this dilemma which Appellant contends has violated his Fifth Amendment privilege against self-incrimination.

. . . .

. . . Where the probation office extracts incriminating information without warning the defendant of the consequences, the confession should not be considered voluntary. The information obtained should not be used to enhance the defendant's sentence as was done here. Appellant would submit that in the coercive setting of a probation department interview, a defendant is entitled to *Miranda* warnings and the presence of counsel."[7]

"(b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.
"(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right."
U.S.S.G. § 3E1.1.

**4.** The mechanics of the sentencing guideline process in general, and in drug-related offenses in particular, are explained in *United States v. Thomas,* 884 F.2d 540, 541–42 (10th Cir.1989) and *United States v. Shorteeth,* 887 F.2d 253, 256–57 (10th Cir.1989).

**5.** Although Rogers contested the "seven" multiplier at sentencing, and uses figures in his appellate brief which ignore the multiplier, Principal Brief of Defendant/Appellant at 13, he does not raise the matter as an issue on appeal.

**6.** The respective base offense levels under the sentencing guidelines for 35 (5 ounces multiplied by 7) and 168 (24 ounces multiplied by 7) ounces of heroin are, respectively, 30 and 34. U.S.S.G. § 2D1.1(c)(5), (7). The probation officer used the base offense level of 34. He then adjusted the level downward two levels to 32, pursuant to U.S.S.G. § 3E1.1, to reflect Rogers'

acceptance of responsibility for his criminal conduct. Rogers' criminal history placed him in category III. The sentencing range in that category for offense level 32 is 151 to 188 months. U.S.S.G. Ch. 5, Pt. A, sentencing table. The district court accepted the adjusted offense level of 32 and criminal history category of III indicated in the presentence report for sentencing purposes, and imposed the sentence of 156 months with 5 years' supervised release. With the same two-point adjustment for acceptance of responsibility, to offense level 28, the sentencing range for the 5 ounces (multiplied by 7) specified in the charge against Rogers would be 97 to 121 months. *Id.* Theoretically, then, Rogers' admission may have increased his sentence by more than four years.

**7.** The right to counsel urged by Rogers would be governed primarily by the Sixth Amendment; however, Rogers mounts no Sixth Amendment argument. The Sixth Amendment right to counsel attaches at the initiation of formal proceedings, and continues through all critical stages of the proceedings, including sentencing. *See Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 2393–94, 101 L.Ed.2d 261 (1988); *Michigan v. Jackson,* 475 U.S. 625, 629–35, 106 S.Ct. 1404, 1407–11, 89 L.Ed.2d 631 (1986); *Moran v. Burbine,* 475 U.S. 412, 428–32, 106 S.Ct. 1135, 1144–

Principal Brief of Defendant/Appellant at 8, 11–12.

■ Rogers' argument faces two hurdles at the outset. First, in the proceedings below Rogers did not specifically object on constitutional grounds to the use of his admissions, although he complained about unfairness. R.Vol. XVI, pp. 10–12. Thus, our review is limited to plain error, or the exercise of supervisory power. *See Newman v. United States,* 817 F.2d 635, 637 n. 3 (10th Cir.1987); *United States v. Cheama,* 783 F.2d 165, 168 (10th Cir.1986).

Second, it is highly disputed whether Rogers admitted anything in his presentence interview which had not already been proved at trial. The district court specifically found, at the time of sentencing, that "the trial testimony would have permitted commencing with a base offense level of 34; and if Mr. Rogers was candid and open and helpful after trial, in my opinion he would not have elevated himself from some lesser level to that. So I certainly agree, in this case I don't believe that there's been any adverse effect by virtue of the candor which resulted in deduction of two offense levels based upon acceptance of responsibility." R.Vol. XVI at 17. The district court's fact findings to the evidence must be accepted on appeal unless they are clearly erroneous. 18 U.S.C. § 3742(d).

However, in its brief on appeal, the government has not identified the evidence at trial which established that Rogers trafficked in twenty-four ounces of heroin, and our review of the record has failed to identify any direct evidence to that effect. There is, of course, substantial evidence with respect to the existence of a conspiracy, a large drug organization, and very substantial amounts of heroin in which the organization trafficked. But, at another point in the sentencing hearing the district

court expressly rejected the government's argument that Rogers should be held accountable for amounts of heroin distributed by the conspiracy as a whole, stating:

"Now, there is, of course, a basis for your presentation to the Court, Mr. Wintory, but it's largely a circumstantial basis. We know that Lisa was active, we know that she accompanied her husband, we know the relationship to Mrs. Robinson, but we really don't know precisely what was said among them or what Mr. Rogers observed, and so forth, and it just rests too much on inference for me to be willing to elevate the base offense level in a way that would have such consequences in the case so I'm just going to approach that conservatively."

R.Vol. XVI at 8. Thus, although the evidence at trial can be construed to support the district court's finding, as an alternative ground for our affirmance of the sentence imposed by the district court we elect to address the merits of Rogers' constitutional argument.

Certain facts form an important backdrop for our analysis. The record affirmatively shows that Rogers volunteered the information about trafficking in twenty-four ounces of heroin. R.Vol. XVI at 2, 10–12, 17. There is no contention in this case of overreaching by the probation officer. Rogers does not argue that the probation officer attempted to extract a confession of other criminal activity, or coerced, cajoled, or prodded Rogers, or otherwise impaired or fettered the exercise of Rogers' Fifth Amendment right to silence. Indeed, Officer Riggs' decision to revise his original draft by *reducing* the quantity of heroin to the amount admitted by Rogers suggests both an absence of purpose to find ways to increase Rogers' punishment,

47, 89 L.Ed.2d 410 (1986); *Estelle v. Smith,* 451 U.S. 454, 470 n. 14, 101 S.Ct. 1866, 1877 n. 14, 68 L.Ed.2d 359 (1981); *Holloway v. Arkansas,* 435 U.S. 475, 481–87, 98 S.Ct. 1173, 1177–80, 55 L.Ed.2d 426 (1978); *Mempa v. Rhay,* 389 U.S. 128, 133–34, 88 S.Ct. 254, 256–57, 19 L.Ed.2d 336 (1967). Three circuits have held that a defendant does not have a Sixth Amendment right to be represented by counsel at a presentence interview. *See United States v. Jackson,* 886 F.2d

838, 843–44 (7th Cir.1989); *Brown v. Butler,* 811 F.2d 938, 941 (5th Cir.1987); *Baumann v. United States,* 692 F.2d 565, 577–78 (9th Cir.1982). Essentially for the same reasons set forth in this opinion with respect to Rogers' Fifth Amendment arguments, we join those circuits and hold that a routine post-conviction presentence interview is not a "critical stage" of the proceedings at which a defendant has a Sixth Amendment right to be represented by counsel.

and a lack of interrogation along those lines. At most, Rogers' contention is that he had a subjective belief that the availability of a two-point downward adjustment in his offense level for acceptance of responsibility compelled him to admit to additional criminal activity.

Rogers' counsel was not present at the presentence interview, but was not excluded. That is, he apparently could have been present if he had wished. There is no allegation that Rogers' counsel did not know that Rogers would be interviewed, and we must assume that the interview was expected, and its purpose, including the nature and structure of the report being compiled, was known. *See* R.Vol. XV at 1078. Rogers' counsel displayed a good working knowledge of the entire process at the sentencing hearing, *see* R.Vol. XVI at 2–17, as well as prior thereto, in the presentation of his objections to the draft presentence report.

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. "A defendant does not lose this protection by reason of his conviction of a crime," *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409 (1984), and "the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure it invites." *In re Gault*, 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967); *see United States v. Jones*, 640 F.2d 284, 287 (10th Cir.1981). Thus, the Supreme Court has held, for example, that the protections of the Fifth Amendment apply to the penalty phase of a capital murder trial, even though the defendant has been convicted of the crime of murder. *Estelle v. Smith*, 451 U.S. 454, 462–63, 101 S.Ct. 1866, 1872–73, 68 L.Ed.2d 359 (1981); *see United States v.*

*Jones*, 640 F.2d at 287 ("There is no question but that the Fifth Amendment does offer protection in the sentencing process."). However, the general rule is that

"[t]he Fifth Amendment privilege against compelled self incrimination is not self-executing. At least where the government has no substantial reason to believe that the requested disclosures are likely to be incriminating, *the privilege may not be relied upon unless it is invoked in a timely fashion.*"

*Roberts v. United States*, 445 U.S. 552, 559, 100 S.Ct. 1358, 1363, 63 L.Ed.2d 622 (1980) (emphasis added); *see Garner v. United States*, 424 U.S. 648, 653–56, 96 S.Ct. 1178, 1181–83, 47 L.Ed.2d 370 (1976). The prophylactic *Miranda* "requirement of specific warnings creates a *limited exception* to the rule that the privilege must be claimed." *Roberts v. United States*, 445 U.S. at 560, 100 S.Ct. at 1364 (emphasis added). But, "the exception does not apply outside the context of the inherently coercive custodial interrogations for which it was designed." *Id.*

A.

■ A routine post-conviction presentence interview by a probation officer does not constitute the type of inherently coercive situation and interrogation by the government for which the *Miranda* rule was designed. That is true even though the defendant is in custody and the consequence of an admission might be more severe punishment. A multitude of reasons support this conclusion.

The purpose of the presentence report, including associated interviews, is neither prosecutorial nor punitive. It is essentially neutral in those respects. The probation officer acts as an agent of the court for the purpose of gathering and classifying information and informing the court in the exercise of its sentencing responsibility.[8] For

---

8. 18 U.S.C. § 3552 and Rule 32 of the Federal Rules of Criminal Procedure govern the preparation and use of presentence reports, in conjunction with U.S.S.G. §§ 6A1.1, p.s., and 6A1.2, p.s. The sentencing court may consider an extremely wide range of information pertaining to a convicted defendant, *United States v. Beaulieu,*

893 F.2d 1177, 1179 (10th Cir.1990); 18 U.S.C. § 3661 (formerly 18 U.S.C. § 3577), subject to certain constitutional constraints. *See Roberts v. United States*, 445 U.S. at 556, 100 S.Ct. at 1362; *United States v. Tucker*, 404 U.S. 443, 446–49, 92 S.Ct. 589, 591–93, 30 L.Ed.2d 592 (1972); *United States v. Strayer*, 846 F.2d 1262,

this reason alone the Seventh Circuit has recently held that the Fifth Amendment is not implicated in a presentence interview. *United States v. Jackson,* 886 F.2d 838, 842 n. 4 (7th Cir.1989) ("[W]e do not believe that a federal probation officer acts on behalf of the prosecution. The custodial statements made by Jackson, which arguably exposed him to serious consequences, were not made to someone acting on behalf of the government prosecutors. Thus, the fifth amendment was not implicated."); *see United States v. Belgard,* 694 F.Supp. 1488, 1495–97 (D.Or.1988) (discussing the probation officer's role and duties in the preparation of a presentence report both before and after the Sentencing Reform Act of 1984).

A presentence interview does not constitute "an interrogation environment ... created for no purpose other than to subjugate the individual to the will of his examiner." *Miranda v. Arizona,* 384 U.S. at 457, 86 S.Ct. at 1619. Nor does the interview present the "coercion inherent in custodial interrogation [which] derives in large measure from an interrogator's insinuations that the interrogation will continue until a confession is obtained." *Minnesota v. Murphy,* 465 U.S. at 433, 104 S.Ct. at 1145. There is no mystery about the contours of the presentence report process. The categories of information sought, and even the headings on the presentence report, are standardized, well documented, publicized, and accessible to defendants through their counsel or otherwise.[9]

Since the presentence report process is familiar and predictable, and defendants, having just gone through a trial, are represented by counsel in most cases, it is a fair assumption that defendants will be advised by counsel prior to a presentence interview. Counsel will either know or can easily learn the date of the interview, and there is no rule which excludes counsel's presence at the interview. In this case, for example, virtually the first thing the court did after discharging the jury was to address Rogers and his counsel about the presentence report process. R.Vol. XV at 1078. It is not surprising, therefore, that no claim is made here of government action to circumvent counsel in order to gain some advantage.

The interview normally is voluntary. That is, as in this case, the defendant is usually not under court order to submit to an interview with the probation officer, and can refuse altogether to be interviewed.[10] Most of the information on the presentence report is gathered from other sources in any event.

Furthermore, at that stage of the proceedings defendants are conversant with their Fifth Amendment rights. See *Michigan v. Tucker,* 417 U.S. 433, 439, 94 S.Ct. 2357, 2361, 41 L.Ed.2d 182 (1974) ("at this point in our history virtually every schoolboy is familiar with the concept, if not the language, of the [Fifth Amendment]."). Most defendants receive *Miranda* warnings prior to being charged, knowledgeably exercise their right to remain silent at trial, and have requested and been allowed a jury instruction on the point, all of which is true in Rogers' case. *See* R.Vol. XIII at 719–39; R.Vol. XIV at 1061–63; Supp.R. Vol. II at Tab 520, Instruction 19. Rewarning the defendant at the beginning of a voluntary presentence interview might underscore the need for caution, perhaps even induce silence, *see Moran v. Burbine,* 475 U.S. 412, 427, 106 S.Ct. 1135, 1144, 89 L.Ed.2d 410 (1986), but it does not serve the purpose of advising the defendant of a previously unknown right to "exert some control over the course of the interroga-

1267 (10th Cir.1988); *United States v. Graves,* 785 F.2d 870, 872–76 (10th Cir.1986).

**9.** *See* 18 U.S.C. §§ 3552, 3553; Fed.R.Crim.P. 32(c); *see also* Division of Probation, Administrative Office of the United States Courts, *Presentence Investigation Reports Under the Sentencing Reform Act of 1984* 64–69 (1987), *reprinted in* Federal Judicial Center, *Guideline Sentencing Orientation* Tab H (1987). *See gen-*

*erally United States v. Belgard,* 694 F.Supp. at 1502–16 (several documents explaining the presentence report appended to the court's opinion).

**10.** 18 U.S.C. § 3552(b) permits a court-ordered study of a defendant which may or may not require an interview. 18 U.S.C. § 3552(c) specifically authorizes a court-ordered psychiatric or psychological examination of the defendant.

tion." *Id.* at 426, 106 S.Ct. at 1143. "[W]e have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Id.* at 422, 106 S.Ct. at 1141.

For part or all of the foregoing reasons two circuits have held that a defendant is not entitled to a *Miranda* warning at a post-conviction presentence interview. *See United States v. Jackson,* 886 F.2d at 841–42 n. 4; *Baumann v. United States,* 692 F.2d 565, 575–77 (9th Cir.1982); *see also United States v. Belgard,* 694 F.Supp. at 1497. And, in a related context, three circuits have held that a post-conviction presentence interview does not constitute "a critical stage" of the proceedings at which a defendant has a Sixth Amendment right to be represented by counsel. *See United States v. Jackson,* 886 F.2d at 843–44; *Brown v. Butler,* 811 F.2d 938, 941 (5th Cir.1987); *Baumann v. United States,* 692 F.2d at 577–78; *cf. Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978); *Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967).

Rogers relies upon *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *United States v. Chitty,* 760 F.2d 425 (2d Cir.), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985); and *Jones v. Cardwell,* 686 F.2d 754 (9th Cir.1982). Both *Estelle v. Smith* and *United States v. Chitty* involved information obtained by a psychiatrist in a court-ordered pretrial competency examination. In *Estelle v. Smith* that information was used by the government to carry its burden of proof at the penalty phase of a capital murder trial. The Supreme Court concluded that the failure to provide the defendant with *Miranda* warnings prior to the psychiatric examination, or to notify the defendant's counsel in advance as to the scope of the interview and allow counsel to advise the defendant as to the "significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed," *Estelle v. Smith,* 451 U.S. at 471, 101 S.Ct. at 1877, violated *Miranda* as well

as the defendant's Sixth Amendment right to counsel. *Id.* at 466–71, 101 S.Ct. at 1874–77. *United States v. Chitty* did not involve a capital punishment case, but the facts are otherwise very much like those in *Estelle v. Smith.* For the many reasons stated above, we regard those cases as distinguishable from a post-conviction presentence interview. The Supreme Court expressly cautioned in *Estelle v. Smith* that it did *"not* hold that the same Fifth Amendment concerns are necessarily presented by all types of interviews and examinations that might be ordered or relied upon to inform a sentencing determination." *Id.* at 469 n. 13, 101 S.Ct. at 1876 n. 13 (emphasis added). In *Jones v. Cardwell,* a panel of the Ninth Circuit applied the Fifth Amendment to a presentence interview with a probation officer where the interview was ordered by the court and the interviewer intentionally sought a confession of additional criminal activity. The court stated:

> "He [the defendant] was instructed that he had no choice but to answer the questions put to him by the probation officer. Because the state was aggressive in extracting a confession from appellee without warning him of the consequences, we hold that appellee's confession, in the setting in which it occurred, was involuntary."

*Jones v. Cardwell,* 686 F.2d at 757.

The facts in *Jones v. Cardwell* are sufficiently different from the case before us to permit the case to be distinguished. Moreover, *Jones* was succeeded by the Ninth Circuit opinion in *Baumann v. United States, supra,* which directly supports our holding in this case.

Finally, we note that the possibility of adverse consequences flowing from an admission to a probation officer is not in and of itself the test for triggering the application of *Miranda.* In *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), a convict on probation was under court order to report to his probation officer and to answer all questions truthfully. The officer purposely asked questions intended to elicit a confes-

sion incriminating the individual for a rape and murder. The information extracted by the probation officer was used to charge and convict the defendant. No *Miranda* warning was required in that situation because the defendant was not in custody, *id.* at 429, 104 S.Ct. at 1143, but as a practical matter the situation was more coercive and the potential consequences were far graver than those presented by a routine presentence interview where there is custody but no interrogation seeking to incriminate for another crime. For the many reasons stated, we hold that *Miranda* warnings are not required prior to routine postconviction presentence interviews.

### B.

Alternatively, Rogers argues that U.S. S.G. § 3E1.1 presents defendants with a constitutionally impermissible Hobson's choice which threatens an enhanced sentence (i.e., a denial of the two-level reduction) unless the defendant confesses to acts which could lead to an even greater sentence. *See Estelle v. Smith,* 451 U.S. at 468, 101 S.Ct. at 1875 ("the privilege is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, *and to suffer no penalty . . . for such silence'*") (quoting *Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964)) (emphasis added); *United States v. Garcia,* 544 F.2d 681, 684–85 (3d Cir.1976).

■ The argument proceeds from a faulty premise. The burden of proof for establishing entitlement to a reduction of the offense level for acceptance of responsibility is on the defendant, who must establish the mitigating factor by a preponderance of the evidence. *See United States v. Urrego–Linares,* 879 F.2d 1234, 1238–39 (4th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989); *United States v. Ligon,* 716 F.Supp. 1009, 1011 (W.D.Ky.1989). However, qualification for the reduction may arise from a variety of things.[11] In this case, following his conviction Rogers sought a reduction by timely admitting his involvement in the conspiracy. Although we do not decide the question because it is not before us, that kind of admission and acceptance of responsibility (if otherwise acceptable to the sentencing court which has discretion on the point, *see United States v. Smitherman,* 889 F.2d 189, 192 (8th Cir.1989); U.S. S.G. § 3E1.1, comment (n.5)), may satisfy the sentencing guidelines without going beyond the actual charge and proof at trial. In other words, Rogers was not necessarily required to disclose unproved, uncharged possession and distribution of heroin in the amount stated in order to satisfy § 3E1.1. *See generally United States v. Perez–Franco,* 873 F.2d 455, 459 (1st Cir.1989).

■ Furthermore, the denial of a downward adjustment under § 3E1.1 does not constitute a penalty or an enhancement of sentence. There is a difference between increasing the severity of a sentence for failure to demonstrate remorse and re-

---

**11.** The application notes relating to § 3E1.1 provide:

"1. In determining whether a defendant qualifies for this provision, appropriate considerations include, but are not limited to, the following:

(a) voluntary termination or withdrawal from criminal conduct or associations;

(b) voluntary payment of restitution prior to adjudication of guilt;

(c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;

(d) voluntary surrender to authorities promptly after commission of the offense;

(e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(f) voluntary resignation from the office or position held during the commission of the offense; and

(g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

2. Conviction by trial does not preclude a defendant from consideration under this section. A defendant may manifest sincere contrition even if he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)."

U.S.S.G. § 3E1.1, comment (nn. 1, 2).

fusing to grant a reduction from the prescribed base offense level. "'It is one thing to extend leniency to a defendant who is willing to cooperate with the government; it is quite another thing to administer additional punishment to a defendant who by his silence has committed no additional offense.'" *United States v. Stratton*, 820 F.2d 562, 564 (2d Cir.1987) ((quoting *United States v. Bradford*, 645 F.2d 115, 117 (2d Cir.1981)) (quoting *United States v. Ramos*, 572 F.2d 360, 363 n. 2 (2d Cir.1978))); *see also Damiano v. Gaughan*, 770 F.2d 1, 3 (1st Cir.1985); *United States v. Brown*, 761 F.2d 1272, 1278 (9th Cir. 1985); *Mallette v. Scully*, 752 F.2d 26, 30 (2d Cir.1984); *United States v. Belgard*, 694 F.Supp. at 1497–98.

In short, U.S.S.G. § 3E1.1 neither "compelled" Rogers to incriminate himself nor, if he had chosen silence, would the denial of a reduction under that section have constituted a penalty in violation of Rogers' Fifth Amendment rights. Thus, Rogers' Fifth Amendment rights were not violated by his unwarned interview with the probation officer simply because he sought a reduction under § 3E1.1.

## II. RIGHT TO A SPEEDY TRIAL

■ The Speedy Trial Act, 18 U.S.C. §§ 3161–74, requires that the trial of a defendant shall commence within seventy days from the filing of the indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. Various enumerated periods of delay may be excluded from the seventy-day computation. 18 U.S.C. § 3161(h).

In this case, among other exclusions, the district court excluded the period of time relating to the pendency of Rogers' motion to dismiss on grounds that the Speedy Trial Act had been violated. With that exclusion, the seventy-day period was satisfied in Rogers' case. Without the exclusion seventy-seven days would have elapsed, and the Act would have been violated. Rogers contends that time attributed to motions to dismiss on speedy trial grounds

may not be excluded from calculations of the seventy-day period.

Section 3161(h) provides in part:

"The following periods of delay shall be excluded in computing the time within which ... the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

(F) delay resulting from *any* pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."

18 U.S.C. § 3161(h)(1)(F) (emphasis added).

Three circuits have considered this issue and have rejected the argument advanced by Rogers on this issue. *See United States v. Brown*, 736 F.2d 807, 809–10 (1st Cir.1984), *cert. denied*, 474 U.S. 1064, 106 S.Ct. 816, 88 L.Ed.2d 789 (1986); *United States v. Tedesco*, 726 F.2d 1216, 1221 (7th Cir.1984); *United States v. Stafford*, 697 F.2d 1368, 1372–73 (11th Cir.1983). In *Stafford*, the Eleventh Circuit observed:

"[W]e need look no further than the explicit language of Section 1361(h)(1)(F), which excludes the period during the pendency of 'any motion.' A motion to dismiss—regardless of the grounds upon which it is based—is a motion like any other motion, and thus falls within the express exclusion of (F)."

*Id.* at 1372. *See generally Henderson v. United States*, 476 U.S. 321, 326, 106 S.Ct. 1871, 1874, 90 L.Ed.2d 299 (1986) ("The plain terms of the statute appear to exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not.").

We agree with the circuits which have spoken on this issue, and hold that the delay caused by filing a motion to dismiss for violating the Speedy Trial Act may be excluded pursuant to the terms of 18 U.S.C. § 3161(h)(1)(F) in computing the time within which the trial of any such offense must commence. Accordingly, the trial court did not err in holding that the Speedy Trial Act was not violated in Rogers' case.

## III. MOTION FOR SEVERANCE

Rogers argues that he should not have been tried jointly with Patricia Williams. He states that out of a total of fourteen counts charged against Williams and Rogers, only three were related, and the only temporal connection between the two was a period of time in 1987. It was not alleged or even implied that the two defendants knew each other or had ever met, only that they were involved in the same conspiracy and enterprise. Rogers further argues that there were no fewer than five witnesses, who were on the witness stand for long periods of time, whose testimony had nothing to do with Rogers. And, he argues that, although the court gave cautionary instructions to the jury on no less than thirteen occasions (including each time an instruction was requested by counsel for Rogers) to the effect that specific items of evidence did not relate to Rogers, but only to Williams,

> "[i]t is alarming that a Rule 105 instruction would have to be requested so often and granted. Further, that even though the Rule had been granted, the bell had been rung and the eyes had seen. You cannot erase a memory just because someone tells you to."

Principal Brief of Defendant/Appellant at 20.

Rule 8 of the Federal Rules of Criminal Procedure provides:

> "Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

Fed.R.Crim.P. 8(b). The test for a proper joinder is a common thread to each of the defendants. *See United States v. McClain*, 823 F.2d 1457, 1467 (11th Cir. 1987). This link between joined defendants may be established by common evidence as to various counts. *See United States v. Lynch*, 800 F.2d 765, 767 (8th Cir.1986), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1310, 94 L.Ed.2d 164 (1987); *United States v. Erwin*, 793 F.2d 656, 665 (5th Cir.), *cert. denied*, 479 U.S. 991, 107 S.Ct. 589, 93 L.Ed.2d 590 (1986). In conspiracy cases, the general rule is that persons indicted together should be tried together. *See United States v. Pack*, 773 F.2d 261, 266 (10th Cir.1985). And, in general, in reviewing the denial of a motion to sever "we strike a balance in favor of joint trials." *United States v. Manner*, 887 F.2d 317, 324 (D.C.Cir.1989).

The counts common to Williams and Rogers were central to this case: engaging in racketeering activities and conspiracy to engage in the enterprise, and conspiracy to distribute heroin. The evidence showed that both Williams and Rogers were wholesale distributors of heroin to the criminal enterprise, and that each traveled or caused others to travel from California to Oklahoma on repeated occasions to distribute heroin. The evidence was strong as to both defendants, and sufficiently strong against Rogers to dispel any argument that he was convicted only because of a spillover effect from evidence relating to Williams. Severance is justified only in the most extreme cases. *See United States v. Hack*, 782 F.2d 862, 870–71 (10th Cir.), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986). This is not one of those cases.

"The trial court's decision on the motion for severance will not be disturbed on appeal in the absence of abuse of discretion." *United States v. Pack*, 773 F.2d at 266–67; *accord United States v. Cardall*, 885 F.2d 656, 667 (10th Cir.1989); *United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir.1989). The district court did not abuse its discretion in denying Rogers' motions for severance.

## IV. CONCLUSION

We have considered all of Rogers' arguments. For the reasons stated above, the judgment of conviction is AFFIRMED.