## State of Vermont v. Ronald Cyr

[726 A.2d 488]

No. 97-450

Present: **Amestoy, C.J., Dooley, Morse and Johnson, JJ., and Cheever, Supr. J., Specially Assigned**

Opinion Filed January 29, 1999

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Robert Appel*, Defender General, and *Henry Hinton*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Morse, J.** Defendant Ronald Cyr was convicted of first degree aggravated domestic assault under 13 V.S.A. § 1043(a)(1) arising from an altercation that occurred during the early morning hours of February 8, 1997. On appeal, he claims the trial court erred by: (1) allowing the State under V.R.Cr.P. 7(d) to amend its single-count information during trial; (2) denying his motion at sentencing to redact statements he made during the presentence investigation (PSI); and (3) refusing to grant him use immunity before allocution. We affirm.

At trial, evidence was introduced that defendant and his girlfriend returned to her residence after the two spent an evening drinking in a Barre bar. An argument ensued and defendant attacked her. She described the attack as one of repeated closed blows to the face, choking, smothering, and tearing of her facial skin with his fingers. During this attack, defendant said he would kill her. She escaped to a neighbor's home and called the police.

Defendant did not take the stand and offered no evidence to dispute his girlfriend's version of the event. In the PSI report prepared after trial, however, defendant's version of the attack differed substantially from hers. According to him, after the two returned from the bar they started arguing, and she grabbed and twisted two of his fingers, breaking one of them. He pushed her away, and she hit a doorway. She then smacked him in the face, whereupon he hit her in the back. She dug her fingernails deep into his neck, at which point he scratched her in the face. Defendant estimated that the entire episode lasted sixty seconds.

The State charged in a single-count information that defendant "did attempt to cause or willfully or recklessly caused serious bodily

injury to a family or household member." At the close of the State's case, defendant moved for acquittal under V.R.Cr.P. 29 (requiring judgment of acquittal if evidence insufficient to sustain conviction), arguing that the information was impermissibly vague and that State's failure to elect "what exactly it is they are charging" warranted dismissal.

Addressing defendant's motion, the court stated: "I think the State has got to develop a theory of the case . . . . I think [the State] can charge it the way they've charged it but . . . they've got to marry up the charge with the facts. So I need to know what [the State's] factual theory [is] to support the charge." The court gave the State until the next day to amend its information to articulate "what the specific act or acts are."

In response to the court's direction, the State filed an amended information, charging in one count that defendant

willfully caused or attempted to cause serious bodily injury by creating a substantial risk of death by smothering and choking; or willfully caused or attempted to cause serious bodily injury by substantial disfigurement by the entire course of conduct culminated by clawing-digging her face; or recklessly caused serious bodily injury by creating a substantial risk of death by smothering and choking; or recklessly caused serious bodily injury by substantial disfigurement by the entire course of conduct culminated by clawing-digging her face, to a family or household member.

The defense again moved to dismiss on the basis that the amended information charged defendant with multiple alternative offenses, and the State had failed to elect a theory of the case.

The trial court denied the motion but instructed the jury to consider a variety of possible verdicts. The court submitted a total of twelve different verdict forms to the jury, which required jurors to choose among different combinations of elements potentially sufficient for a conviction. Specifically, in order to return a verdict of guilty, jurors had to choose one of three types of culpability — willfully caused bodily harm, willfully attempted to cause bodily harm, or recklessly caused bodily harm. They also had to choose between the State's two factual theories, i.e., whether the assault was accomplished by "smothering or choking" or by "the entire course of conduct culminated by clawing-digging [the victim's] face." Finally, because defendant had requested instructions on the lesser-included

offense of domestic assault, jurors had to choose between harms resulting in bodily injury or "serious" bodily injury, the former being sufficient for a nonaggravated domestic assault conviction. The court instructed the jury that it could return a guilty verdict on only one of the twelve possible theories.

The jury returned a verdict of guilty indicating that defendant had "Recklessly Caused Serious Bodily Injury by substantial disfigurement by the entire course of conduct culminated by clawing-digging the face of . . . a family or household member." Subsequently, defendant filed a motion for arrest of judgment under V.R.Cr.P. 34 ("[t]he court . . . shall arrest judgment if the indictment or information does not charge an offense") and, alternatively, a motion for new trial under V.R.Cr.P. 33, arguing that the State's amendment of the information during trial violated V.R.Cr.P. 7. The trial court denied the motion.

## I.

Defendant's first claim is that the State violated V.R.Cr.P. 7(d) (permitting amendment of information at trial only if "no additional or different offense is charged and if substantial rights of the defendant are not prejudiced") by alleging alternative offenses within a single count. We agree with the State that the amended information charged merely one crime and, albeit not simply, clarified the alternative means by which the offense was alleged to have been committed. Rule 7(b) states in part, "[t]he indictment or the information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." V.R.Cr.P. 7(b). The State's initial information satisfied the requirement of Rule 7(b).

Defendant was charged with assaulting his girlfriend by hitting, smothering, choking, and clawing her. The acts of defendant were related to one attack. While the amended information did charge three offenses in the disjunctive, two — attempt and reckless action — are subsumed within the third, willful causation of serious bodily harm. See *State v. Bolio*, 159 Vt. 250, 253-54, 617 A.2d 885, 887 (1992) (establishing proof of higher culpable mental state necessarily establishes the lower state of recklessness); *State v. Young*, 139 Vt. 535, 542, 433 A.2d 254, 258 (1981) (attempt is a lesser-included offense of a completed crime).

Statutes may define an offense by two or more separate acts or transactions in the disjunctive, the whole may be charged in the conjunctive, and the accused may be found guilty of any one of the

acts alleged. See *State v. McDermott*, 135 Vt. 47, 50-51, 373 A.2d 510, 513-14 (1977). The test is whether the information sets forth charges with sufficient particularity to reasonably indicate the exact offense charged and to enable a defendant to prepare a defense. See *State v. Christman*, 135 Vt. 59, 60, 370 A.2d 624, 625 (1977). The information may take several forms: conjunctive or disjunctive pleading of separate offenses within single counts, or pleading each offense in a separate count. See *McDermott*, 135 Vt. at 51, 373 A.2d at 513-14. We have stated that a disjunctive pleading is not fatal if "the offenses were *not* so separate and distinct as to require different evidence in prosecution and defense of them." *Id.* at 51, 373 A.2d at 513. The danger that some jurors may convict on evidence of one act while other jurors will rely on another, see *State v. Zele*, 168 Vt. 154, 158, 716 A.2d 833, 836 (1998), is not present here. Additionally, the concern that jurors may be swayed by the amount of evidence presented as to all the acts when there is inadequate proof on any one act alone, see *id.*, is also absent given the court's instructions.

■ While the amendment to the information and resulting twelve alternative verdict forms was needlessly complicated, defendant brought the instruction upon himself by objecting to a more simplified presentation. Here, the trial court gave carefully tailored instructions to the jury, along with special verdict forms. The court made clear to the jury that it could only return one guilty verdict if jurors unanimously agreed with any of the verdicts. Thus the court eliminated any danger of unfair prejudice.

## II.

After receiving the PSI report, but prior to sentencing, defendant filed a motion to redact portions of the PSI. Defendant requested that certain statements made during his interview with a probation officer be stricken because they were obtained in violation of his right against self-incrimination and his right to counsel. Defendant first claims that the probation officer improperly obtained defendant's statements because *Miranda* warnings were not given to him before speaking with the officer.

At the sentencing hearing, defense counsel referred to *Miranda* warnings during her colloquy with the court. However, counsel made these references without citing any supporting case law as to why *Miranda* was even applicable to a PSI interview. Moreover, no factual record was developed to indicate whether defendant was "in custody,"

as that term is defined in *Miranda v. Arizona*, 384 U.S. 436 (1966), or the nature of questioning at the PSI interview. Without such a factual record, the issue was not adequately presented and supported.

We note that the majority of courts that have addressed this issue under the federal constitution have held that PSI interviews do not require *Miranda* warnings. See *United States v. Hicks*, 948 F.2d 877, 885 (4th Cir. 1991) (probation officer need not give *Miranda* warnings prior to conducting PSI); *Williams v. Chrans*, 945 F.2d 926, 951 (7th Cir. 1991) (same); *United States v. Cortes*, 922 F.2d 123, 126-27 (2d Cir. 1990) (same); *United States v. Rogers*, 921 F.2d 975, 979 (10th Cir. 1990) (no reason to extend *Miranda*-type warnings to presentence interviews); *United States v. Miller*, 910 F.2d 1321, 1326 (6th Cir. 1990) (same); *Baumann v. United States*, 692 F.2d 565, 576-77 (9th Cir. 1982) (same). The rationale for not extending *Miranda* warnings for routine presentence interviews is that probation officers are not conducting coercive interrogations with defendants. See *Williams v. Chrans*, 945 F.2d at 951 (PSI conducted by neutral information gatherer for sentencing judge rather than by police or prosecution); *United States v. Cortes*, 922 F.2d at 126 (probation officers serve as agents of the court); *United States v. Rogers*, 921 F.2d at 979 (interview with probation officer neither prosecutorial nor punitive).

Next, defendant claims that his statements to the probation officer violated his Fifth Amendment right against self-incrimination, citing *State v. Cox*, 147 Vt. 421, 519 A.2d 1144 (1986). Defendant's reliance on *Cox* is misplaced. There, the defendant invoked his Fifth Amendment right against self-incrimination by indicating that he did not want to talk to the probation officer conducting his PSI until speaking with an investigator from the public defender's office. See *id.* at 422, 519 A.2d at 1145. The investigator had yet to arrive when the interview was set to begin. The probation officer told the defendant that she would not return at a later time to conduct the interview, causing the defendant to believe that he would not get an opportunity to consult with the defender's office before the interview. See *id.* at 424, 519 A.2d at 1146. Believing that this would be his only chance to tell his side of the story, the defendant reluctantly went ahead with the interview. See *id.*

We ruled that the conditions under which defendant continued with his PSI were coercive, rendering his statements involuntary and in violation of his Fifth Amendment rights. See *id.* at 425, 519 A.2d at 1147. Here, nothing in the record indicates that defendant's statements to the probation officer were involuntary.

 Furthermore, defendant failed to claim his privilege against self-incrimination. See *Minnesota v. Murphy*, 465 U.S. 420, 425 (1984) (Fifth Amendment privilege against self-incrimination is generally not self-executing). "It is quite likely that a defendant will be aware of his Fifth Amendment rights before the presentence interview is conducted, and in any event his attorney knows that there will be a presentence interview and can advise the defendant accordingly." *Cortes*, 922 F.2d at 127. Such was the case here. Defendant did not testify at trial, and he was familiar with the PSI routine having previously been through it for prior offenses. Additionally, after the jury found defendant guilty, the trial judge announced in defendant's presence that there would be a presentence investigation.

The defendant also claims his Sixth Amendment right to counsel was violated because his attorney was not present during the PSI. Again, the factual record in this case is insufficient to evaluate defendant's Sixth Amendment claim. Defendant does not assert that his counsel was excluded from the PSI or that he was forced to proceed without her. Defense counsel was presumably aware that the court had ordered a PSI, and the record is silent as to why she was not present during the interview. Thus, no Sixth Amendment issue arises from these facts.

## III.

 Finally, defendant contends that the trial court erred when it refused to grant his request for use immunity for his testimony at sentencing concerning the current and pending offenses. Defendant claims that by refusing to grant him use immunity at sentencing, he was unable to give his version of the incident that resulted in his conviction. Defendant makes this claim although he had previously given his version of the attack to the interviewing probation officer. Furthermore, although defense counsel requested "use immunity for anything [defendant] says," counsel failed to describe how defendant's testimony regarding the charges might impact the outcome of the sentencing hearing. Defendant, when asked by the court at his sentencing if he wished to make a statement, said: "I am really sorry for everything that happened. And my part in the fight. And I never intended to hurt her. And any program that I can get into I will get into." Defendant failed to demonstrate any plausible theory of how the outcome would have been different if he had been able to testify with immunity. See *In re D.C.*, 157 Vt. 659, 660, 613 A.2d 191, 192 (1991) (mem.) (rejecting similar argument because appellant "failed

to present the [trial] court with specific grounds for his objection to proceeding without immunity").

*Affirmed.*