**STATE of Vermont v. Dean HILL, Jr.**

[816 A.2d 440]

No. 01-358

October 30, 2002. Defendant Dean Hill, Jr. appeals from his conviction of aggravated sexual assault for which he was sentenced to serve thirty-five to sixty years. Defendant raises three claims on appeal: (1) he asserts that he was denied the right to a fair trial when the trial court limited his cross-examination of the victim, based on her prior deposition testimony; (2) he argues that the trial court committed plain error in allowing the Department of Social and Rehabilitation Services (SRS) worker to testify in a manner that vouched for the victim's credibility; (3) he contends that the trial court erred in denying his motion to suppress statements he made to the probation officer during the presentence investigation interview, because they were taken in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). We affirm.

Defendant was charged with one count of aggravated sexual assault under 13 V.S.A. § 3253(a)(8), as a person over the age of eighteen years who engaged in á sexual act — in this case, mouth to vulva contact — with another person under the age of ten years. Various pretrial motions were filed, including a notice of Rule 804a evidence filed by the State seeking to introduce hearsay statements of D.M., the alleged victim, through the testimony of the school guidance counselor, the SRS investigator, and the victim's mother. Over defendant's objections, the court ruled that the 804a statements would be admitted.

After a one-day trial, the jury returned a verdict of guilty. The court ordered a presentence investigation (PSI), which included an interview with defendant by a probation officer. Defendant subsequently filed a motion for a new trial, asserting the three arguments mentioned above. At the sentencing hearing, the trial court denied defendant's motion on all three grounds and, relying on the presentence investigation report, sentenced defendant to a term of thirty-five to sixty years. Defendant appealed the conviction and the sentence.

On appeal, defendant first argues that his constitutional right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and Chapter I, Article 10 of the Vermont Constitution was violated when the trial court prohibited him from cross-examining the minor victim about her failure to describe the charged act in her deposition. As the trial court's ruling was an exercise of discretion under V.R.E. 403, we review this ruling under an abuse

of discretion standard. See *State v. Cartee*, 161 Vt. 73, 75, 632 A.2d 1108, 1110 (1993). To establish a claim of abuse of discretion, the complainant bears the burden of showing that the trial court withheld its discretion, or exercised it "upon grounds clearly untenable or unreasonable." *State v. White*, 172 Vt. 493, 500, 782 A.2d 1187, 1192 (2001). This Court will not disturb reasonable discretionary rulings of the trial court "even if another court might have reached a different conclusion." *State v. Foy*, 144 Vt. 109, 115, 475 A.2d 219, 223 (1984).

Defendant's counsel took the deposition of the minor victim, D.M., but she was generally unresponsive to questions pertaining to alleged sexual contact. Counsel never asked any questions pertaining specifically to the charged conduct, that is, mouth to vulva contact. D.M. was more responsive to the State's questioning, although the State similarly did not ask any questions specifically about the charged conduct. At trial, in an attempt to show that D.M. had been unable earlier to relate the charged conduct and thereby cast doubt on her credibility, counsel for defendant referred D.M. to the deposition, and then asked, "Okay, now do you remember that when we talked that day that you never said anything about licking, that Dean Hill licked your privates?" The State made an objection to this question, which the trial court sustained.

Following the conviction, defendant moved for a new trial asserting among other grounds that the court's ruling was wrong and denied him his constitutional right to impeach the victim. In rejecting this argument, the court ruled that the answer that defense counsel sought was not relevant, because it was "not a misstatement or a 180 degree off statement, or a change in position or a recantation" by D.M., but rather a matter that she was not questioned about at her deposition. The court further ruled that "introduc[ing] to the jury what amounts to the double negative, cross-examining the young child about things she was never asked about, could only have unfairly confused her and confused and misled the jury as to what the child did or did not say." We do not find this ruling to be an abuse of discretion.

We recognize that the trial court's broad discretion to exclude evidence is limited in criminal matters by a defendant's constitutional right to confront witnesses against him and by the demands of due process. *State v. Webster*, 165 Vt. 54, 56, 675 A.2d 1330, 1332 (1996). We further recognize that challenging a witness's capacity to observe, remember, or narrate has been long recognized as a method of impeachment under the common law and can play an essential role in a defendant's right of confrontation. See 4 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 607.05[1], at 607-50 (J. McLaughlin ed., 2d ed. 2002) (describing impeachment based on mental incapacity).

However, where the testimony sought is of questionable impeachment value and may confuse both the witness and the jury, exclusion of such testimony does not impinge on a defendant's right of confrontation and right to a fair trial. See *United States v. Piche*, 981 F.2d 706, 715-16 (4th Cir. 1992) (Sixth Amendment right of confrontation not violated by exclusion of impeachment evidence where evidence was ambiguous as to bias and would mislead jury and confuse issues). Here, the trial court correctly weighed the impeachment value of the evidence against its prejudicial impact, and determined that the possibility of confusion to the witness and to the jury from asking a young child about matters that she had never been directly questioned about before outweighed the evidence's power to impeach. This is not an unreasonable or untenable conclusion, and we will not overturn it.

Defendant next argues that the court erred in allowing the SRS worker to

testify in a manner that vouched for the victim's credibility. Since defendant did not object to this testimony at trial, we review this claim only for plain error. *State v. Pelican*, 160 Vt. 536, 538, 632 A.2d 24, 26 (1993). For a defect to rise to the level of plain error, it must seriously affect substantial rights and have an unfair prejudicial impact on the jury's deliberations. *Id.* at 538-39, 632 A.2d at 26. We do not find plain error here.

Pursuant to V.R.E. 804a, the SRS worker was permitted to testify at trial as to statements D.M. made to her during a pretrial interview about the charged conduct. Defendant now contends that at trial the court impermissibly allowed the SRS worker to testify not only to D.M.'s statements but also to "conclusions she reached based presumably upon her determination that what the juvenile told her was the truth." Thus, defendant alleges that the SRS worker testified as if she were an eyewitness, and, as a result, impermissibly vouched for D.M.'s credibility. See *State v. Weeks*, 160 Vt. 393, 400, 628 A.2d 1262, 1266 (1993) ("The admission of an expert's testimony on the victim's credibility . . . [has] been condemned in case after case.").

Defendant's characterization of the SRS worker's testimony is incorrect. During its direct examination, the State consistently phrased its questions to elicit what D.M. told the SRS worker, often asking "What did she tell you about that?" and "Did you ask her . . .? What did she say to that?," and following up with "This is what [D.M.] told you?" Viewed within this context, it is clear that the handful of "were you able to determine" questions that defendant points to as demonstrating that the State solicited conclusions from the SRS worker concerning D.M.'s credibility were merely further attempts to bring out and clarify D.M.'s statements during the interview. The trial court did not commit plain er-

ror, if error at all, in permitting this testimony.

Finally, defendant argues that the trial court erred in denying his motion to suppress statements made during the PSI report interview, where defendant was in custody, was represented by counsel, and was not provided *Miranda* warnings. This Court has not decided whether the warnings mandated by *Miranda v. Arizona*, 384 U.S. 436 (1966), are required prior to questioning at a PSI interview. However, in *State v. Cyr*, 169 Vt. 50, 726 A.2d 488 (1999), while declining to find that the defendant was entitled to *Miranda* warnings at the PSI interview as the record did not clearly indicate that the defendant was "in custody," we noted that

the majority of courts that have addressed this issue under the federal constitution have held that PSI interviews do not require *Miranda* warnings. See *United States v. Hicks*, 948 F.2d 877, 885 (4th Cir. 1991) (probation officer need not give *Miranda* warnings prior to conducting PSI); *Williams v. Chrans*, 945 F.2d 926, 951 (7th Cir. 1991) (same); *United States v. Cortes*, 922 F.2d 123, 126-27 (2d Cir. 1990) (same); *United States v. Rogers*, 921 F.2d 975, 979 (10th Cir. 1990) (no reason to extend *Miranda*-type warnings to presentence interviews); *United States v. Miller*, 910 F.2d 1321, 1326 (6th Cir. 1990) (same); *Baumann v. United States*, 692 F.2d 565, 576-77 (9th Cir. 1982) (same). The rationale for not extending *Miranda* warnings for routine presentence interviews is that probation officers are not conducting coercive interrogations with defendants. See *Williams v. Chrans*, 945 F.2d at 951 (PSI

conducted by neutral informa-
tion gatherer for sentencing
judge rather than by police or
prosecution); *United States v.
Cortes,* 922 F.2d at 126 (proba-
tion officers serve as agents of
the court); *United States v.
Rogers,* 921 F.2d at 979 (inter-
view with probation officer nei-
ther prosecutorial nor punitive).

*Id.* at 55, 726 A.2d at 492.

As we signaled in *Cyr,* we find that the
rationale for not extending *Miranda* to
routine PSI interviews is persuasive.
*Miranda* created a limited exception to
the rule that the Fifth Amendment privi-
lege against compelled self-incrimination
must be claimed, and "the exception does
not apply outside the context of the in-
herently coercive custodial interrogations
for which it was designed." *Roberts v.
United States,* 445 U.S. 552, 560 (1980).
And although typically a defendant is in
custody during PSI questioning, we find
that a routine presentence interview is
not inherently coercive, and thus does
not require *Miranda* warnings.

The stipulated facts in the present case
illustrate the noncoercive nature of the
presentence interview. After the verdict
was returned, both defendant and his
trial attorney were informed by the trial
court that a PSI was being ordered. The
prosecutor did not direct or participate in
any part of the PSI. The PSI interview
was conducted by a probation officer, an
employee of the Department of Correc-
tions. At the interview, the probation
officer advised defendant of the follow-
ing: the interview was being conducted at
the request of the court; all information
provided by defendant at the interview
would be given to the court to aid in the
sentencing determination; the purpose of
the interview was to develop defendant's
life history; defendant could use the in-
terview to tell the court what he thought
it should know; and, prior to sentencing,
defendant and his attorney would have
the opportunity to review the PSI for any
inaccuracies. Defendant was further
asked whether he had any questions
concerning the PSI process.

After being so advised, defendant indi-
cated that he did not have any further
questions and was willing to go ahead
with the interview. The probation officer
proceeded to question him, following a
standard format. According to the stipu-
lated facts, defendant answered the pro-
bation officer's questions "freely and at
length," and at no time did he request the
presence of his attorney. After the PSI
report was completed, a copy was pro-
vided to defendant's trial counsel. Con-
trary to defendant's assertions, we can
find nothing about this process that rises
to the level of coercion.

Defendant's Fifth Amendment claim
also fails because he has not identified
any statements made during the presen-
tence interview that may have prejudiced
the sentencing determination. See
*United States v. Palomo,* 80 F.3d 138,
142 (5th Cir. 1996) ("Inasmuch as no
harm has been shown, [defendant] has
not demonstrated an actionable violation
of his right against self-incrimination.");
see also *State v. Bushey,* 147 Vt. 140, 144,
513 A.2d 1177, 1180 (1986) (because de-
fendant did not demonstrate prejudice,
Court declines to address Fifth Amend-
ment issue). Defendant refers to "uncon-
stitutionally obtained statements made to
the probation officer," but fails to detail
the statements and further fails to allege
how such statements adversely affected
the sentencing decision. Absent a show-
ing of harm, we will not find a Fifth
Amendment violation.

*Affirmed.*