UNITED STATES of America, Appellee,

v.

James CHITTY, Defendant-Appellant.

No. 496, Docket 84–1167.

United States Court of Appeals,
Second Circuit.

Argued Dec. 4, 1984.

Decided April 18, 1985.

Michael Young, New York City, for defendant-appellant.

Stuart R. GraBois, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., Barry A. Bohrer, Asst. U.S. Atty., New York City, on brief), for appellee.

Before MANSFIELD, OAKES and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

James Chitty appeals from a judgment of conviction entered in the District Court for the Southern District of New York (John F. Keenan, Judge) following a ten-day jury trial. Chitty was convicted on eleven counts of a twelve-count indictment charging participation in a scheme involving the interstate transportation and sale of approximately $475,000 in stolen securities. 18 U.S.C. §§ 2, 371, 1343, 2314 (1982). Of the numerous issues raised on appeal, only the challenge to the sentence has merit. We therefore affirm the conviction, but vacate the sentence imposed and remand for resentencing.

Since the sufficiency of the evidence is not disputed, the facts need not be detailed. It suffices to note that Chitty and three accomplices, Frederick Moir, Benjamin Thelin, and Joseph Brovich, were all involved in a scheme to profit from the use of $475,000 in bearer bonds that had been stolen. The group used the bonds for various purposes. On one occasion the bonds were pledged to a New Jersey bank as collateral for an $80,000 loan, the proceeds of which were shared with Chitty. On another occasion the bonds were taken to New Rochelle, New York, where they were to be sold for $190,000 to a person purporting to represent an interested purchaser; the proceeds of the sale were to be used to pay off the New Jersey loan. The "agent" of the purchaser was an F.B.I. undercover agent. The evidence disclosed that Chitty and his accomplices prepared forged documents in their efforts to make use of the stolen bonds and moved the bonds across state lines and made interstate telephone calls in furtherance of the scheme. Moir, Thelin, and Brovich pled guilty to various charges in connection with the scheme. Chitty alone stood trial. Upon conviction on 11 counts, he was sentenced to a total of 21 years.

I.

The challenges to the conviction do not require extended discussion. The first is a claim that two counts of the indictment charging interstate transportation of stolen securities in violation of 18 U.S.C. § 2314 are multiplicitous. Chitty does not dispute the fact that the bonds were transported from New York to New Jersey on April 5, 1983, as alleged in Count 2, and from New Jersey to New York on June 17, 1983, as alleged in Count 3. Rather, he contends

that because the same bonds were transported in both trips, there was but one "transportation" for purposes of section 2314. *See United States v. Johnpoll*, 739 F.2d 702, 714–15 (2d Cir.) (transportation of securities and, eight days later, of proceeds of same securities was one "transportation"), *cert. denied*, — U.S. ——, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984).

■■■ We are not persuaded. "[E]ach interstate or foreign transportation of stolen securities constitutes a separate violation of § 2314, even if the various acts of transportation are part of a single scheme." *Id.* at 714. And where, as here, each crossing of a state line had its own illegal purpose, had its own intended victim, was made to carry out a separate transaction, and was separated by time and intervening events, each crossing of state lines constituted a "transportation" within the meaning of 18 U.S.C. § 2314, even though the same securities were involved in the two transportations. *See United States v. Dilts*, 501 F.2d 531, 534–35 (7th Cir.1974) (per curiam); *United States v. Brodbeck*, 430 F.Supp. 1056, 1060 (E.D. Wis.1977); *cf. United States v. Wilson*, 431 F.2d 1118 (8th Cir.1970) (Mann Act), *cert. denied*, 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971); *Nelms v. United States*, 291 F.2d 390, 394 (4th Cir.1961) (same). The transportation to New Jersey was accomplished to procure a bank loan; the transportation to New York was intended to victimize a purchaser. The second transportation was not a "continuation" of the first, *cf. United States v. Johnpoll, supra*, 739 F.2d at 715, but a separate offense.

Appellant next contends that the prosecutor failed to disclose evidence needed to challenge the testimony of Phillip Smith, one of three principal witnesses against Chitty. Because he was the only one of the three who was not also a co-defendant, Chitty claims that Smith's testimony was especially important in proving Chitty's involvement in the illegal scheme. Defense

counsel was able to impeach Smith's testimony by contrasting his testimony at trial with his initial statement to the authorities, which indicated that Chitty was not significantly involved. Not disclosed to defense counsel, however, was the fact that Smith had been notified that he was the target of an investigation by the United States Attorney's office. Prior to trial defense counsel had made a broad request of the prosecutor for exculpatory material, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). After trial the prosecutor trying the case first learned that others in his office were investigating Smith. Two days later the prosecutor notified defense counsel of the fact of Smith's target status.

■■■ *Brady v. Maryland, supra*, imposes an affirmative duty on the prosecutor to produce requested evidence that is favorable to the accused. The *Brady* rule applies equally to impeachment and exculpatory evidence.

> The taint . . . is not erased because [the withheld information] affects only his credibility as a witness. "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence. . . ."

*United States v. Seijo*, 514 F.2d 1357, 1364 (2d Cir.1975) (quoting *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)). The information that Smith had been told that he was under investigation was disclosable pursuant to *Brady, see Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); it provided a motive to testify favorably to the Government, and the fact was known to the prosecutor's office, *id.* at 154, 92 S.Ct. at 766; *cf. United States v. Sperling*, 506 F.2d 1323, 1332–33 (2d Cir.1974) (Jencks Act), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975).

■■■ Since Chitty had made only a "general request" for impeaching material,[1] non-disclosure of Smith's target status

---

1. Defendant also made a demand for "[i]dentifi-     cation of all judicial proceedings involving any

does not warrant a new trial unless "the undisclosed evidence, viewed in the context of the entire record, creates a reasonable doubt that otherwise would not exist." *Ostrer v. United States*, 577 F.2d 782, 786 (2d Cir.1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1018, 59 L.Ed.2d 73 (1979); *see United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). No such doubt is created regarding Chitty's guilt because Smith's testimony was not essential to the outcome. The critical evidence against Chitty was the testimony of his accomplices, numerous documents, and his fingerprint on one of the forged documents. Though Smith's testimony implicated Chitty, it was equivocal since he could testify only that certain steps in aid of the scheme were taken either by Chitty or by one of the accomplices. The nondisclosure of impeachment material regarding a principal witness has typically resulted in a new trial where the witness supplied the critical evidence against the defendant. *See Giglio v. United States, supra,* 405 U.S. at 151, 92 S.Ct. at 764; *United States v. Seijo, supra,* 514 F.2d at 1360; *United States v. Badalamente*, 507 F.2d 12, 16 (2d Cir.1974), *cert. denied*, 421 U.S. 911, 95 S.Ct. 1565, 43 L.Ed.2d 776 (1975); *United States v. Sperling, supra,* 506 F.2d at 1331. The prosecutor's failure fully to comply with the requirements of *Brady* does not require a new trial in this case.

■ Chitty next contends that the failure of the prosecutor and the District Court to grant use immunity to a defense witness denied Chitty's constitutional right to compulsory process. After being told by the prosecutor that she had made false statements to the FBI and that she was a target for prosecution, the witness invoked her Fifth Amendment privilege to remain silent. The District Court refused to direct the prosecutor to grant use immunity or to strike the prosecution testimony that the witness would have rebutted.

There is a substantial element of unfairness in the refusal to grant this witness use immunity. The prosecution granted three of its own witnesses use immunity and entered into generous plea agreements with Chitty's co-defendants.[2] There is no indication that the FBI actively pursued an investigation of the witness either before or after she was called by Chitty. Moreover, the prosecution would have suffered no prejudice by granting use immunity to the witness, for it apparently already had evidence to prosecute her for making false statements to the FBI. Nor was she an important suspect or co-defendant who might be acting with Chitty to secure joint acquittals through "cooperative perjury." *See United States v. Turkish*, 623 F.2d 769, 775 (2d Cir.1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981).

■ But not every unfairness is a violation of due process; "we simply do not find in the Due Process Clause a general requirement that defense witness immunity must be ordered whenever it seems fair to grant it," *id.* at 777. To raise a constitutional claim, the witness' testimony must have been material, exculpatory, and neither cumulative nor available from any other source. *See United States v. Burns*, 684 F.2d 1066, 1077 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983); *United States v. Turkish, supra,* 623 F.2d at 776–78.

This standard has not been met. The witness' testimony would have shown only that Chitty did not personally seek notarization of a fictitious document. This evidence would not have been exculpatory, however, because no evidence was introduced to show that Chitty had the document notarized and because his overall involvement in the preparation and use of

---

person who is a potential government witness," but this request did not call for disclosure of the "target" status of Smith, who was not a person involved with judicial proceedings.

2. One co-defendant was sentenced to probation, a second was sentenced to one year in a community treatment center and probation, and the third was sentenced to three years' incarceration.

the fictitious document could not have been rebutted by such limited testimony. Denial of use immunity in these circumstances was not a denial of Chitty's due process rights.

Chitty's remaining challenges to the conviction are totally without merit and require no discussion.

## II.

We turn to the challenge to the sentence, a claim that one of the prosecutors tainted the sentencing proceeding and impaired Chitty's Fifth Amendment rights by presenting evidence of Chitty's statements made during a pretrial psychiatric examination to determine his competency to stand trial. *See* 18 U.S.C. § 4244 (1982) (now § 4241). Chitty was not warned that statements made during the psychiatric examination might be used against him and was not advised that he could have an attorney present during the examination. During the course of the court-ordered examination, in response to a question about the role of an Assistant United States Attorney (AUSA), Chitty made the following threatening statements about the AUSA prosecuting the case:

> GraBois [the prosecutor] has destroyed me, he destroyed my life.... GraBois' going to get his.... He's going to pay.... We're going to come down on him.

At the subsequent competency hearing, defense counsel objected to the Government's questioning of the psychiatrist about these statements. The District Court determined that the statements were not pertinent to the question of competency but nonetheless admitted them, again over defense objection, because they were "very relevant" to the determination of Chitty's bail status. Relying largely on the threats, the District Court remanded Chitty without bail.

After Chitty's conviction, the statements made during the psychiatric examination again became an issue. The Probation Department indicated in its presentence report that Chitty had "made threats against the life of the Assistant United States At-

torney." At the sentencing hearing, an AUSA who had not previously appeared for the Government referred to the threats and said:

> I am here really in my representative capacity for the United States Attorney's office. So that Mr. Chitty and others like him will know that if threats like these are made it will not intimidate those who are charged with enforcing the law. That goes for the agents involved in this case as well as the prosecutors.

The AUSA argued that Chitty should be incarcerated "for a very long time." Defense counsel moved to strike the references to the threats and asked the District Judge to recuse himself from the sentencing of appellant. The District Court denied the motion and, placing emphasis on Chitty's previous record of convictions, sentenced appellant to 21 years' imprisonment. Chitty now challenges that sentence as violative of his Fifth and Sixth Amendment rights because it was based in part on statements Chitty made at the court-ordered psychiatric examination.

■ Initially, we reject the Government's argument that the sentence is not subject to challenge because the District Judge relied only on Chitty's criminal record. District judges are not yet required to state the reasons for criminal sentences they impose, *see United States v. Golomb*, 754 F.2d 86, 90 (2d Cir.1985). Thus, a volunteered indication by the trial judge that he relied on appellant's criminal record does not justify an inference that he did not also rely in part on the threats. Nor is this a case like *United States v. Armedo-Sarmiento*, 545 F.2d 785, 795 (2d Cir.1976), *cert. denied*, 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977), in which the District Judge specifically indicated that he would disregard inaccuracies in the probation report. In light of the District Court's explicit reliance on the threats in denying bail, there is a distinct risk that the District Court gave some weight to the threats when imposing sentence, especially when the threats were so vigorously relied

upon by a prosecutor who entered the case for the sole purpose of urging precisely such consideration. We therefore reach the constitutional question.

In *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Supreme Court held that testimony of a psychiatrist who conducted a competency examination could not be introduced at a sentencing hearing on capital punishment "because respondent was not advised before the pretrial psychiatric examination that he had a right to remain silent and that any statement he made could be used against him at a sentencing proceeding." *Id.* at 461, 101 S.Ct. at 1872. This case is similar to *Estelle v. Smith* in several respects. The competency examination here "was ordered even though defense counsel had not put into issue [the defendant's] competency to stand trial or his sanity at the time of the offense." *Id.* at 457 n. 1, 101 S.Ct. at 1870 n. 1. The nature of the competency hearing in this case and in *Estelle v. Smith* are fundamentally the same.

The considerations calling for the accused to be warned prior to custodial interrogation apply with no less force to the pretrial psychiatric examination at issue here. Respondent was in custody ... when the examination was ordered and when it was conducted. That respondent was questioned by a psychiatrist designated by the trial court to conduct a neutral competency examination, rather than by a police officer, government informant, or prosecuting attorney, is immaterial. When [the psychiatrist] went beyond simply reporting to the court on the issue of competence and testified for the prosecution at the penalty phase on the crucial issue of respondent's future dangerousness, his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting.

*Id.* at 467, 101 S.Ct. at 1875.[3] The Fifth Amendment interest at stake here is arguably greater than in *Estelle v. Smith*, for here the psychiatrist recounted statements made by the appellant rather than only his medical conclusions about the defendant's competency, *id.* at 459–60, 101 S.Ct. at 1871–72. Because of these factors, Chitty argues that *Estelle v. Smith* precludes consideration at sentencing of statements made during his court-ordered psychiatric examination. We agree.[4]

The only arguable basis for distinguishing *Estelle v. Smith* is that the Supreme Court was considering a sentencing hearing at which the death penalty could be imposed, a circumstance not present here. In declining to apply *Estelle v. Smith* to preclude use at sentencing of statements elicited by a probation officer preparing a presentence report, the Ninth Circuit has expressed the view that the Supreme

**3.** These same factors would justify the conclusion that the competency examination was a "critical stage" of the prosecution at which appellant's Sixth Amendment rights would attach. *Estelle v. Smith, supra,* 451 U.S. at 470, 101 S.Ct. at 1876. Nevertheless, we need not decide whether Chitty's Sixth Amendment right to "prior opportunity to consult with counsel about his participation in the psychiatric examination," *id.* at 470 n. 14, 101 S.Ct. at 1877 n. 14, was abridged. The remedy afforded for the violation of his Fifth Amendment rights is the same remedy to which he would be entitled in this case for any violation of his Sixth Amendment rights. Our reluctance to decide an issue unnecessary to the result of this appeal is increased by the fact that here, unlike in *Estelle v. Smith, see id.* at 470–71 & n. 15, 101 S.Ct. at 1876, 77 & n. 15, defense counsel apparently was notified that the examination would take place. Having not-

ed this difference, we express no opinion on the question whether the Sixth Amendment right recognized in *Estelle v. Smith* is satisfied merely by notifying defense counsel of an impending competency examination.

**4.** Prior to *Estelle v. Smith* this Circuit would have rejected Chitty's claim, *Hollis v. Smith,* 571 F.2d 685, 690–91 (2d Cir.1978), and even after *Estelle v. Smith* a panel of the Ninth Circuit has refused to foreclose consideration at a non-capital sentencing proceeding of statements made to a probation officer at a presentence interview, *Baumann v. United States,* 692 F.2d 565, 574–78 (9th Cir.1982); *but see Jones v. Cardwell,* 686 F.2d 754, 756–57 (9th Cir.1982) (*Estelle v. Smith* governs interview with probation officer when information will be used at sentencing).

Court's holding "is limited to the distinct circumstances of the bifurcated capital proceedings in that case." *Baumann v. United States,* 692 F.2d 565, 576 (9th Cir.1982). And it cannot be denied that the Supreme Court noted that "the ultimate penalty of death was a potential consequence of what respondent told the examining psychiatrist." *Estelle v. Smith, supra,* 451 U.S. at 462, 101 S.Ct. at 1872. But we are not persuaded that the Fifth Amendment ruling announced in *Estelle v. Smith* is limited to sentencing hearings involving capital punishment. In stating its holding, the Court emphasized the Fifth Amendment considerations, not the gravity of the particular sentence at issue:

> [U]nder *Miranda v. Arizona,* [384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)], we must conclude that, when faced while in custody with a court-ordered psychiatric inquiry, respondent's statements to [a psychiatrist] were not "given freely and voluntarily without any compelling influences" and, as such, could be used as the [Government] did at the penalty phase only if respondent had been apprised of his rights and had knowingly decided to waive them.

451 U.S. at 469, 101 S.Ct. at 1876 (quoting *Miranda v. Arizona, supra,* 384 U.S. at 478, 86 S.Ct. at 1630). We conclude that *Estelle v. Smith* precludes reliance at sentencing on the statements made by Chitty under the circumstances of his court-ordered competency examination.

■ Normally, we would be inclined simply to remand for resentencing by Judge Keenan without regard to the threatening remarks. However, the emphatic intrusion of these remarks into the sentencing hearing by one of the prosecutors, though obviously not the fault of Judge Keenan, nonetheless makes it appropriate to remand for resentencing before another judge.

The conviction is affirmed, the sentence is vacated and the cause remanded for resentencing by another judge.