**UNITED STATES of America, Appellee,**

v.

**Jose Ivan CORTES,
Defendant–Appellant.**

**No. 522, Docket 90–1408.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 16, 1990.

Decided Dec. 26, 1990.

Richard I. Rosenkranz, Brooklyn, N.Y., for defendant-appellant.

Jonathan M. Gerson, Brooklyn, N.Y., Asst. U.S. Atty., E.D.N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., David C. James, Asst. U.S. Atty. of Counsel), for appellee.

Before FEINBERG, PIERCE and MINER, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Jose Ivan Cortes appeals from a sentence imposed by the United States District Court for the Eastern District of New York, Arthur D. Spatt, J., upon Cortes's plea of guilty to the crime of failure to file a currency report in violation of 31 U.S.C. § 5316(b). Cortes claims that his Fifth and Sixth Amendment rights were violated by the presentence interview conducted by a probation officer, and that the district court erred in enhancing his sentence under the United States Sentencing Guidelines because there was insufficient evidence to support the finding that Cortes knew or believed that the funds he failed to declare in the currency report were derived from criminal activity. For the reasons given below, we affirm.

Background

In February 1990, Cortes went to John F. Kennedy Airport in order to board a flight to Colombia. Before boarding the flight, Cortes was stopped by a customs inspector who gave him a customs form to complete. The form stated that all individuals who are carrying more than $10,000 in currency must file a report at the time of departure. Cortes told the customs inspector that he had read and understood the form and that he was carrying $3,500 in United States Currency. Cortes then signed the form, declaring the $3,500.

An examination by customs agents revealed $3,646 on Cortes's person and over $876,000 in money orders concealed in a radio packed in his checked luggage. Cortes was then arrested, and upon arrest expressed surprise that the radio contained anything unusual. He stated that he had bought the radio from a stranger on the street about eight days earlier. However, Cortes's story was belied by the fact that some of the money orders in the radio had been purchased just one day earlier.

Cortes pled guilty in March 1990 to the first count of a two-count indictment. Shortly thereafter, Probation Officer Santiago Muino interviewed Cortes, who was in custody at the time, in connection with preparation of a presentence report. The interview was conducted in Spanish, which is the native language of both Cortes and Muino.

According to the presentence report, during the interview Cortes told Muino that he had actually obtained the radio from a man named Leonardo, whom he had met at a pick-up soccer game in a park. Leonardo offered Cortes $1,200 and round-trip air fare to Colombia for transportation of the radio. The presentence report then states that "Cortes knew [the radio] contained money orders" and that "he knew that the money orders he was transporting were probably drug money, but became involved nevertheless." The report accordingly rec-

ommended that Cortes's base offense level under the Sentencing Guidelines be enhanced because of his knowledge that the funds were derived from criminal activities.

After receiving a copy of the presentence report, Cortes's attorney sent a letter to the district court, objecting to the allegation that Cortes believed the money orders in the radio were criminally derived, and requesting a hearing on the matter before the imposition of sentence.

The district court conducted a hearing in June 1990, at which both Muino and Cortes testified. Muino testified that although Cortes never said in the presentence interview that Leonardo had told him it was drug money ("narco dinero"), Cortes did say that, based on what Leonardo had told him, he formed the conclusion that the money was "probably narco dinero." Although Cortes's testimony confirmed that he had met Leonardo as described by Muino in the presentence report, Cortes claimed that he was not aware that the radio contained the proceeds of narcotics sales at the time he agreed to carry it, and thought rather that the money was "profit from raffles." Cortes said that it was only after his arrest that he came to believe "that [the] money was probably from drugs."

At the conclusion of the hearing, Judge Spatt stated that he "credit[ed] the testimony of Probation Officer Santiago Muino" and found Cortes's testimony to be "illogical," "ludicrous," "unbelievable" and "certainly not credible to the Court." Judge Spatt accordingly found that the government had established by a preponderance of the evidence that Cortes knew or believed that the funds were criminally derived. For this reason, the judge enhanced the base offense level for Cortes's crime from five to 18 pursuant to U.S.S.G. § 2S1.3. Further calculations under the Guidelines, including a two-level reduction for Cortes's acceptance of responsibility under section 3E1.1, ultimately reduced the base offense level to 16. Thereafter, Judge Spatt sentenced Cortes to a term of imprisonment of 27 months, three years of supervised release and a special assessment of $50. This appeal followed.

## Discussion

### A. The Fifth Amendment Claim

■ Cortes contends that his Fifth Amendment rights were violated during his presentence interview with the probation officer. According to the government, Cortes waived this argument because he did not present it to the district court. However, at the sentencing hearing, Cortes's counsel stated that he wanted an "agreement" that the probation officer did not give the *Miranda* warnings or inform Cortes of his privilege against self-incrimination. The court then ruled that the warnings were not necessary and received the statements. Cortes thus preserved his Fifth Amendment claim for appeal, since he sufficiently expressed his "objection to the action of the court and the grounds therefor" in satisfaction of Fed.R.Crim.P. 51.

■ Cortes did not assert his Fifth Amendment rights at the presentence interview, but there are certain well-defined exceptions to the general rule requiring assertion of the privilege, all of which involve "some identifiable factor [that denies] the individual a free choice to admit, to deny, or to refuse to answer." *Minnesota v. Murphy*, 465 U.S. 420, 429, 104 S.Ct. 1136, 1143, 79 L.Ed.2d 409 (1984). For example, we have found that the Fifth Amendment need not be asserted in order to apply during a presentence interview with a probation officer if the defendant must admit criminal conduct beyond the offense of conviction in order to receive credit for acceptance of responsibility under U.S.S.G. § 3E1.1, since the defendant's assertion of the privilege would penalize him under those circumstances. *United States v. Oliveras*, 905 F.2d 623, 626–28 (2d Cir.1990) (per curiam).

Cortes attempts to rely upon *Oliveras*, but we do not regard that case as controlling here. In contrast to the defendant's situation in *Oliveras*, Probation Officer Muino probed Cortes only about his con-

duct in connection with the offense of conviction. Moreover, at the district court hearing, Cortes flatly denied that he knew the funds were criminally derived, but the district court nonetheless granted Cortes a two-level reduction for acceptance of responsibility under section 3E1.1. Cortes therefore cannot claim that he was presented with a constitutionally impermissible Hobson's choice that threatened an enhanced sentence, i.e., a denial of the two-level reduction under the section, unless he confessed that he knew the money was criminally derived, which would lead to an even greater sentence. Moreover, it is at least questionable whether section 3E1.1 would run afoul of the Fifth Amendment when the questions are confined to the offense of conviction as they were here. *See United States v. Herrera–Figueroa*, 918 F.2d 1430 (9th Cir.1990); *United States v. Rogers*, 921 F.2d 975, 982–83 (10th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 113, 112 L.Ed.2d 83 (1990); *cf. United States v. Stratton*, 820 F.2d 562, 564 (2d Cir.1987) (constitutionally permissible to reduce a sentence for defendant's cooperation with government but impermissible to increase sentence for failure to cooperate).

■ Cortes also claims that his Fifth Amendment rights were violated because the interview took place without administration of the warnings prescribed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "Although *Miranda*'s requirement of specific warnings creates a limited exception to the rule that the privilege [against self-incrimination] must be claimed, the exception does not apply outside the context of the inherently coercive custodial interrogations for which it was designed." *Roberts v. United States*, 445 U.S. 552, 560, 100 S.Ct. 1358, 1364, 63 L.Ed.2d 622 (1980). Thus, we must determine whether a routine presentence interview with a probation officer is the type of custodial interrogation for which *Miranda* warnings are required.

The other circuits that have addressed this issue have found that a defendant is not entitled to a *Miranda* warning at a post-conviction presentence interview. *See United States v. Miller*, 910 F.2d 1321, 1326 (6th Cir.1990); *Rogers*, 921 F.2d at 979; *United States v. Jackson*, 886 F.2d 838, 841–42 n. 4 (7th Cir.1989); *Baumann v. United States*, 692 F.2d 565, 575–77 (9th Cir.1982). But *cf. Jones v. Cardwell*, 686 F.2d 754, 756–57 & n. 2 (9th Cir.1982). We agree that a probation officer need not give *Miranda* warnings before conducting a routine presentence interview, and so hold.

We have recognized that although the role of the probation officer has changed with the advent of the Sentencing Guidelines, it remains true that "these officers continue to serve as neutral information gatherers for the sentencing judge." *United States v. Colon*, 905 F.2d 580, 588 (2d Cir.1990). The Seventh Circuit has held that for this reason alone, a presentence interview does not raise Fifth Amendment concerns, reasoning that it is only when the prosecution uses the defendant's statement that the Fifth Amendment is implicated. See *Jackson*, 886 F.2d at 841–42 n. 4. However, the government in this case relied solely upon the testimony of the probation officer to carry *its* burden of proof in establishing that Cortes's sentence should be increased because he knew the funds were criminally derived. We therefore do not find the reasoning in *Jackson* altogether persuasive on this record.

Indeed, the mere fact that a probation officer conducts the interview as an agent of the court does not necessarily mean that *Miranda* warnings will not be required if the probation officer then subsequently testifies on the government's behalf. *See Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *United States v. Chitty*, 760 F.2d 425 (2d Cir.), *cert. denied*, 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985). In both cases, the defendant was questioned by a psychiatrist pursuant to a court order for the purpose of determining whether the defendant was competent to stand trial. The psychiatrist, however, then testified for the prosecution against the defendant in the sentencing proceeding, thus exposing the defendant to consequences in the criminal proceeding he

had not foreseen at the time of questioning. In both cases, it was held that the Fifth Amendment barred this use of the defendant's statements since he did not voluntarily consent to the examination after being informed of his right to remain silent and that his statements might be used against him.

We think it is significant in the context of the issue before us that the defendant in both *Estelle* and *Chitty* was ordered to submit to the interrogation for a stated purpose, and did not know that the prosecution would subsequently use the information against him in a manner unrelated to the purported purpose of the interrogation. *See* 451 U.S. at 467–68, 101 S.Ct. at 1875–76; 760 F.2d at 430–31. In contrast, Cortes does not claim that he was ordered to submit to a presentence interview or that he was unaware that his answers to the probation officer's questions might have an adverse effect upon his sentence. This is not surprising, since a defendant is not usually ordered to submit to a presentence interview and the "categories of information sought, and even the headings on the presentence report, are standardized, well documented, publicized, and accessible to defendants through their counsel or otherwise." *Rogers*, 921 F.2d at 980 & n. 10.

The requirement that *Miranda* warnings be given to a defendant is an attempt to give "the *defendant* the power to exert some control over the course of the interrogation." *Moran v. Burbine*, 475 U.S. 412, 426, 106 S.Ct. 1135, 1143, 89 L.Ed.2d 410 (1986). In light of the knowledge available to a defendant concerning the content of the presentence interview and the consequences of his responses to a probation officer's questions, we do not think that the Fifth Amendment requires a probation officer to give *Miranda*-type warnings prior to a routine presentence interview. It is quite likely that a defendant will be aware of his Fifth Amendment rights before the presentence interview is conducted, and in any event his attorney knows that there will be a presentence interview and can advise the defendant accordingly. The defendant is thus capable of exerting control over the course of the presentence interview, the significance of which is heightened in this custodial setting by the fact that the questions are asked by a neutral information gatherer for the court rather than by the police or prosecution, the parties most likely to coerce the defendant into relinquishing his Fifth Amendment rights and the parties against whom *Miranda* ordinarily applies.

■ Cortes met with his attorney before pleading guilty and was made aware of the significance of whether the money came from drugs. Moreover, as discussed below, Cortes's attorney had the right to attend the interview. On this record, Cortes's Fifth Amendment rights were not violated, since this was a routine presentence interview that was not inherently coercive and did not require the administration of *Miranda* warnings.

### B. *The Sixth Amendment Claim*

■ Because Cortes's counsel was not present at the presentence interview, Cortes claims that his Sixth Amendment right to counsel was violated. We have previously noted that "[a]rguably, the Guidelines have significantly altered the sentencing process in relevant ways" so that the presentence interview may now be a "critical stage" of the proceedings necessitating the participation of counsel. *Colon*, 905 F.2d at 588. The Sixth Circuit, without deciding the question, has taken a similar view. *United States v. Saenz*, 915 F.2d 1046, 1048–49 (6th Cir.1990). Likewise, the Ninth Circuit, relying upon its supervisory power rather than the Sixth Amendment, has found that when a defendant requests that his attorney be present at a presentence interview, the probation officer must honor that request. *See Herrera–Figueroa, supra.* The circuits that have decided this issue since the Guidelines have gone into effect have found that a defendant's Sixth Amendment right to counsel does not attach to the presentence interview because the interview is not a critical stage of the proceeding. *See Unit-*

ed States v. Woods, 907 F.2d 1540, 1543 (5th Cir.1990); Jackson, 886 F.2d at 845.

We need not decide this issue, however, because even if we assume that the Sixth Amendment right to counsel extends to routine presentence interviews, Cortes's right was not violated. Cortes does not claim that his counsel was excluded from the interview or that he was forced to proceed without the presence of counsel. Indeed, Rule 6(a)(1)(ii) of the Local Criminal Rules for the United States District Courts for the Southern and Eastern Districts of New York provides that "[o]n prompt request," defense counsel is "entitled to be present to protect defendant's rights whenever the defendant is interviewed by probation officers regarding a presentence report to the court." Moreover, nothing in the Sentencing Guidelines excludes counsel from the presentence interview. *Saenz*, 915 F.2d at 1049. Cortes's counsel apparently made no request to attend the presentence interview. In addition, Cortes did not raise his Sixth Amendment objection in the district court. On these facts, we find *Colon* to be controlling, which requires that we reject Cortes's Sixth Amendment claim:

> Counsel was surely aware that [Cortes] had to be interviewed before sentencing, and counsel made no objection. He was also aware at sentencing of the damaging admissions made by [Cortes] in the interview and still raised no [Sixth Amendment] objection. Even if we assume that it was error for the court to receive the statements, the error was not so "plain" that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.

*Colon*, 905 F.2d at 588; accord *Saenz*, 915 F.2d at 1049.

### C. Sufficiency of the Evidence

██ Cortes also claims that there was insufficient evidence to prove that he knew that the money orders contained in the radio were criminally derived. Although Cortes suggests that the government must establish this fact beyond a reasonable doubt, it is well settled that the preponderance-of-the-evidence standard applies to disputed factual allegations at sentencing.

*United States v. Tillem*, 906 F.2d 814, 829 (2d Cir.1990).

The evidence before the district court on whether Cortes knew the funds were criminally derived consisted of the conflicting testimony of Cortes and Probation Officer Muino. Although Cortes argues that Muino's testimony was ambiguous, Muino concluded his testimony by stating that Cortes had told him the money was "probably narco dinero." Moreover, Muino's testimony is supported by extrinsic evidence, since according to the notes Muino took during the presentence interview, "Defendant knew that the money was probably drug money but did it anyway."

Thus, even if Cortes had told a credible story, we do not see how the district court clearly erred by crediting Muino's testimony and rejecting Cortes's testimony, since

> when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

Moreover, Cortes's story was not facially plausible. Cortes claimed in effect that after one brief meeting with a total stranger, he was given a radio containing $876,-000 in negotiable money orders, and testified that he thought the money "was profit from raffles," a belief that is particularly implausible in light of the fact that Cortes was about to board a flight to Colombia. The district court therefore did not err in accepting Muino's testimony that Cortes knew at the time of his arrest that the money was criminally derived, and this testimony was sufficient to carry the government's burden of proof on this issue at sentencing.

Accordingly, we affirm the judgment of the district court.