RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0128p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

No. 12-1660

STEPHEN GRAHAM-WRIGHT,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:11-cr-00071-1—Robert J. Jonker, District Judge.

Decided and Filed: May 7, 2013

Before: BOGGS, MOORE, and SUTTON, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** Scott Graham, SCOTT GRAHAM PLLC, Portage, Michigan, for Appellant. Sean M. Lewis, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

    SUTTON, J., delivered the opinion of the court in which, BOGGS, J., joined. MOORE, J. (pp. 10–17), delivered a separate dissenting opinion.

_____

### OPINION

_____

    SUTTON, Circuit Judge. Stephen Graham-Wright challenges the procedural and substantive reasonableness of his sentence, complaining in particular about the district court's consideration of statements he made to a psychiatrist during a pretrial competency examination and of the psychiatrist's diagnosis that he was a pedophile. We must affirm.

I.

In October 2010, Stephen Graham-Wright repeatedly directed his girlfriend's six-year-old sister to pose nude in photographs and videos.  He also touched the young girl's genitalia on multiple occasions.  When the girl's parents became suspicious, they alerted the police.  Graham-Wright confessed, and the police found sexually explicit pictures and videos of the girl on his cell phone and computer.

After the police arrested Graham-Wright, his lawyer filed a motion under 18 U.S.C. § 4241 for a government-paid "in-custody examination regarding competency and cognitive function."  R. 14.  Graham-Wright asked that the results of that examination be provided only to him.  Section 4241 allows either party to request a competency hearing, but it requires the results of any examination to "be filed with the court with copies provided to the counsel for the person examined and to the attorney for the Government."  *Id*. §§ 4241(b), 4247(c).  The district court granted Graham-Wright's motion for an examination, but it denied his request that only the defendant receive the results.

A psychiatric examination was scheduled at the Metropolitan Correctional Center in Chicago.  Before the examination, staff informed Graham-Wright that the results would "not [be] confidential" and would be provided to the prosecution and the court.  R. 25 at 1.  Graham-Wright conferred with his lawyer before discussing any of the details of the offenses and went forward with the examination.  The psychiatrist found him competent to stand trial but diagnosed him with pedophilia.  Graham-Wright pled guilty to one count of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e).

Before sentencing, Graham-Wright objected to the inclusion of information from the psychiatric examination in his pre-sentence report.  In particular, the pre-sentence report included the pedophilia diagnosis and the fact that he fantasized about having sex with children.  The guidelines generated a range of 360 months to life.  Because 360 months was the statutory maximum, that figure became the top and bottom of the

guidelines range.  The district court sentenced him to 360 months, rejecting his request for a downward variance.

II.

A.

In attacking the procedural reasonableness of his sentence, Graham-Wright claims that the district court should not have considered information from the psychiatric examination in sentencing him because the court obtained that information in violation of his Fifth Amendment right against self-incrimination.  The examination, as an initial matter, had nothing to do with the starting point for sentencing Graham-Wright:  the guidelines range.  Even in the absence of an examination, Graham-Wright warranted a 360-month guidelines "range" for this offense, and he does not argue to the contrary.

What Graham-Wright protests is the court's consideration of information from the examination in denying his request for a downward variance to 180 months.  But evidentiary inclusiveness is the order of the day at sentencing, a frame of reference as likely to facilitate leniency as to impede it.  The key question is reliability.  Sentencing hearings may include evidence otherwise inadmissible at trial so long as the evidence is reliable.  *Roberts v. United States*, 445 U.S. 552, 556 (1980).  That is why the Rules of Evidence do not apply at sentencing hearings.  *Williams v. New York*, 337 U.S. 241, 251 (1949); *see also United States v. Silverman*, 976 F.2d 1502, 1509–14 (6th Cir. 1992) (en banc).  That is why the Confrontation Clause does not apply at sentencing.  *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006); *see also United States v. Hamad*, 495 F.3d 241, 246–47 (6th Cir. 2007).  And, of import here, that is why *Miranda* generally does not apply at sentencing.  A sentencing court may consider "statements obtained in violation of *Miranda*, if they are otherwise voluntary" and reliable.  *United States v. Nichols*, 438 F.3d 437, 442 (4th Cir. 2006); *accord Del Vecchio v. Ill. Dep't of Corr.*, 31 F.3d 1363, 1388 (7th Cir. 1994) (en banc); *see also Oregon v. Elstad*, 470 U.S. 298, 307 (1985) ("[T]he *Miranda* presumption, though irrebuttable for purposes of the prosecution's case in chief, does not require that the statements and their fruits be discarded as inherently tainted."); *cf. United States v.*

*Jenkins*, 4 F.3d 1338, 1345 (6th Cir. 1993) (permitting the use of illegally seized evidence at sentencing). In the absence of coercion, excluding otherwise reliable information from sentencing hearings would require probation officers to give *Miranda* warnings before conducting presentencing interviews—a possibility rejected long ago. *See United States v. Davis*, 919 F.2d 1181, 1186–87 (6th Cir. 1990). When all is said and done, a sentencing judge's inquiry is "broad in scope," and it is "largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446 (1972).

Gauged by these modest limitations, Graham-Wright's sentence was neither procedurally unreasonable nor a violation of the Fifth Amendment privilege against self-incrimination. It was Graham-Wright, not the district court, who requested the examination. Graham-Wright consulted with counsel just before discussing the details of his offense and after being warned that the court would have access to the results of the examination. Everything in the record suggests he voluntarily submitted to the examination and spoke voluntarily during it. And nothing shows that the court compelled him in either respect. Through it all, Graham-Wright and his counsel had ample reason to undertake an examination (the results might have shown he was incompetent to stand trial), and the district court had ample reason to know the results of the test (ditto). This evidence was reliable, and the district court had discretion to consider it.

In arguing to the contrary, Graham-Wright invokes *Estelle v. Smith*, 451 U.S. 454, 468–69 (1981), which held that a state court violated a *capital defendant's* right against self-incrimination by relying on the results of an *involuntary* examination to prove an *aggravating factor*. The italicized words confirm the limits of *Estelle*'s domain.

*First*, *Estelle* applies to capital sentencing proceedings, not all sentencing proceedings. As the Supreme Court has subsequently explained, the holding of *Estelle* was limited to "the 'distinct circumstances' of that case." *Buchanan v. Kentucky*, 483 U.S. 402, 422 (1987) (quoting *Estelle*, 451 U.S. at 466). The Court has "never

extended *Estelle*'s Fifth Amendment holding beyond its particular facts." *Penry v. Johnson*, 532 U.S. 782, 795 (2001). What was "distinct" and "particular" about *Estelle*? It was a capital case in which "the ultimate penalty of death was a potential consequence of what [Smith] told the examining psychiatrist," 451 U.S. at 462, as the examination results proved an aggravating factor that justified the death penalty and "on which the State had the burden of proof beyond a reasonable doubt," *id.* at 466.

Nothing of the sort happened here. The examination did not go to an element of the offense or to an aggravating factor at sentencing, much less to a justification for a capital sentence. If "death is different," *Ford v. Wainwright*, 477 U.S. 399, 411 (1986), it follows that the difference runs in two directions—that it must be accounted for in non-capital cases, that not all capital-sentencing requirements apply to all sentences. This is one such requirement. Graham-Wright has not pointed to any federal appellate decisions excluding the results of a psychiatrist's examination from a non-capital sentencing, whether based on *Estelle* or any other case. And a half-dozen courts of appeals have rejected similar extensions. *See Halley v. Thaler*, 448 F. App'x 518, 522 (5th Cir. 2011) ("Plainly, [the defendant's] case differs from *Estelle* in that it does not involve a capital offense in which the jury must make a special finding regarding future dangerousness."); *United States v. Jackson*, 886 F.2d 838, 841 n.4 (7th Cir. 1989) ("seriously question[ing] the rationale" of excluding evidence based on a *Miranda* violation in a non-capital sentencing); *Baumann v. United States*, 692 F.2d 565, 576 (9th Cir. 1982) (*Estelle* "is limited to the distinct circumstances of the bifurcated capital proceedings presented in that case"); *Lee v. Crouse*, 451 F.3d 598, 606 (10th Cir. 2006) ("*Estelle* is distinguishable because it was a capital case"); *United States v. Delgado*, 56 F.3d 1357, 1371 (11th Cir. 1995) (*Estelle* "applies specifically to capital sentencings"); *United States v. Byers*, 740 F.2d 1104, 1112 (D.C. Cir. 1984) (en banc) (plurality opinion) (Scalia, J.) (*Estelle* held the Fifth Amendment applied "[b]ecause the possible consequence" of the defendant's statements "was imposition of the death penalty").

Our own research reveals just one appellate decision applying *Estelle* in this setting, *United States v. Chitty*, 760 F.2d 425 (2d Cir. 1985), and it is at least three steps

removed from today's case. In the course of a court-ordered psychiatric examination, the defendant threatened the life of the Assistant United States Attorney. The government relied on the threats at sentencing as a ground for incarcerating Chitty "for a very long time," and the court of appeals ordered the statements suppressed. *Id.* at 430. While we cannot deny that *Chitty* applied *Estelle* to a non-capital sentencing proceeding, at least three features of the case marginalize its relevance here. First, Graham-Wright's key objection is to the district court's use of his diagnosis, not to statements (let alone threats) he made during the examination. Second, since *Chitty*, the Second Circuit has made it clear that presentencing interviews do not always require *Miranda* warnings. *See United States v. Cortes*, 922 F.2d 123, 127 (2d Cir. 1990). And third, the *Chitty* and *Estelle* examinations were done involuntarily, which was not the case here and which leads to our next point.

*Second*, even if *Estelle* extended to non-capital sentencing proceedings, it applies only to an *involuntary* psychiatric examination. *Estelle*, 451 U.S. at 468. Yet Graham-Wright "initiate[d]" the idea of an evaluation. *Id.* He asked for a psychiatric evaluation under 18 U.S.C. § 4241, a statute that does not provide for a defense-only report. It is true that, at the hearing on the motion, Graham-Wright's attorney indicated that he wanted what § 4241 does not permit—for a government-paid psychiatrist to perform the examination and to give the report only to the defense. The court denied Graham-Wright's request and ordered a report that would be distributed to both parties and filed with the court.

By contrast, it is worth noting, 18 U.S.C. § 3006A allows for government-paid, defense-only reports if the defendant qualifies for in forma pauperis status. Perhaps Graham-Wright's counsel would have been wise to invoke § 3006A and perhaps the court would have granted the request. Who can say? But none of this indicates that the court initiated the evaluation or that it was somehow involuntary.

*Third*, not only did Graham-Wright freely submit to the examination but his statements to the psychiatrist were themselves voluntary, a far cry from the kind of compelled testimony prohibited by the Fifth Amendment. No evidence shows the court

or anyone else coerced, intimidated or threatened him to speak during the examination. Just the other way: Graham-Wright conferred with his attorney before he agreed to discuss any of the details of his offense, and he was warned that his statements would be given to the court. *Cf. also Roberts*, 445 U.S. at 560–61 (explaining that *Miranda* "protect[s] persons who, exposed to [coercive] interrogation without the assistance of counsel, otherwise might be unable to make a free and informed choice to remain silent"). Those factors distinguish this case from *Estelle*, where it was not clear the defendant's lawyer was informed of, let alone participated in, the psychiatric exam, 451 U.S. at 471 & n.15, and from both *Estelle* and *Chitty*, where the defendants were not told how the exams might be used, *id.* at 468; *Chitty*, 760 F.2d at 430–31.

All of these limitations on the application of *Estelle* to this case also respect *United States v. Kennedy*, 499 F.3d 547, 552 (6th Cir. 2007). It held that a sentencing court did not violate a defendant's privilege against self-incrimination when it drew an adverse inference regarding the defendant's future dangerousness from the defendant's refusal to undergo a psychiatric exam. *Kennedy* reasoned that, although *Mitchell v. United States*, 526 U.S. 314, 324 (1999), prohibits sentencing courts from drawing an adverse inference against a defendant's silence when determining *the facts of an offense*, *Mitchell* "does not limit the district court's ability to consider a wide variety of 'information concerning the background, character, and conduct' of the defendant in determining an appropriate sentence." *Kennedy*, 499 F.3d at 552 (quoting 18 U.S.C. § 3661).

Today's case is easier than *Kennedy*. The district court relied on real information from a real psychiatrist after a voluntary examination. How strange to allow a sentencing court to draw an adverse inference from the silence that results from refusing to undertake a court-ordered examination yet to forbid any inferences from expert testimony after a voluntary examination. No such oddity is required. The district court permissibly considered the results from the examination in refusing to grant Graham-Wright's request for a downward variance.

B.

Even if, for the sake of argument, the district court was incorrect, any error did not prejudice Graham-Wright.  As with other constitutional errors, self-incrimination violations may be harmless.  *See Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (controlling opinion of Rehnquist, C.J.).  At  sentencing, we need not remand if, based "on the record as a whole . . . the error did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203 (1992).

Just so here.  The alleged constitutional violation had nothing to do with Graham-Wright's guidelines range.  With or without a psychiatric examination, it would have been 360 months.  And he received a within-guidelines sentence of 360 months—not a surprising outcome when the nature of the offense is taken into account.  In denying Graham-Wright's request for a downward variance, the court relied on several factors, most of which had nothing to do with the psychiatric examination.  Most notably, Graham-Wright had a history of sexually inappropriate behavior around children, which was consistent, not at odds, with the examination.  And the severe emotional trauma Graham-Wright imposed on the victim and her family would have given any judge pause before granting a downward variance.  On this record, we can fairly assume that, even without the psychiatric report, the district court would have imposed this within-guidelines sentence.

C.

In challenging the substantive reasonableness of his sentence, Graham-Wright claims the district court was obligated to grant his request for a downward variance.  No abuse of discretion occurred.  *See Gall v. United States*, 552 U.S. 38, 51 (2007).  A 360-month sentence is lengthy, to be sure.  But the sentence falls within the guidelines range, making it presumptively reasonable. *Rita v. United States*, 551 U.S. 338, 347 (2007).  Graham-Wright has not overcome that presumption.  The district court expressly considered all of the § 3553(a) factors and reasonably concluded that a guidelines sentence was appropriate.

## III.

For these reasons, we affirm.

———————————

**DISSENT**

———————————

KAREN NELSON MOORE, Circuit Judge, dissenting.  I respectfully dissent because I believe that the district court relied on the examination report in violation of Graham-Wright's Fifth Amendment right against self-incrimination.  Because my view rests on an alternative understanding of what occurred at the district court, a full recitation of the facts is necessary.

**I.**

Prior to pleading guilty to sexual exploitation of a child, Graham-Wright filed an unopposed motion for the district court "to order an appropriate examination of competency and sanity" under 18 U.S.C. § 4241(a) to be performed by a private mental-health professional.  R. 14 (Mot. for Exam. at 1) (Page ID #20).  At the motion hearing, Graham-Wright's attorney requested that any reports prepared pursuant to the motion be provided to the defense only.[1]  R. 60 (Mot. Hr'g at 7) (Page ID #280).  In essence, Graham-Wright's attorney argued that he had no basis without an examination either to assert that Graham-Wright was incompetent to stand trial or to raise an insanity defense.  Concerned that his client might incriminate himself in an evaluation, Graham-Wright's attorney asked that any report from the examination be given solely to the defense to determine if there were a basis to assert incompetency or insanity.  If there were a basis for either, Graham-Wright would then proffer the corresponding report to the government and the court.  If there were no basis, the report would remain with Graham-Wright's counsel alone.  Graham-Wright's attorney analogized that a defense-only report would be "the same type of report that he would get if he had the money in which to hire the expert."  R. 60 (Mot. Hr'g at 7) (Page ID #280).

———————————

[1]In his brief in support of the motion, Graham-Wright requested that the examination be conducted by a doctor of his choice wherever he was housed by the United States Marshals Service at that time.  R. 14-1 (Br. in Support at 2) (Page ID #23).

The district court asked Graham-Wright's attorney if he was seeking a defense-only report under 18 U.S.C. § 4241 or under 18 U.S.C. § 3006A. *Id.* Graham-Wright's attorney responded:

> [W]hether . . . it's paid for by 3006 monies or not, . . . I believe . . . [it's] appropriate under . . . the statute. I don't know that the statute expressly provides that a defendant has a right to a separate defense report, but clearly the statute provides that the Court is authorized to order a report. And I think the discretion is given to the Court to determine the form of the report. And it is my interpretation of the statute that best practice would be to allow the defendant to have a report to work with himself. So I can't point—I've looked through the statute as best I can from beginning to end, but I believe that's—it's the Court's discretion.

*Id.* at 7–8 (Page ID #280–81). Although the government encouraged the district court to adopt Graham-Wright's proposed procedure for the handling of any report, the district court expressed concern with permitting a defense-only report under 18 U.S.C. §§ 4241 and 4242. Nonetheless, the district court gave Graham-Wright one week to file a memorandum in support of the proposed procedure.

In his memorandum on the defense-only evaluation, Graham-Wright clarified that the "'sanity' evaluation might be more properly referenced under 18 U.S.C. § 4242," even though Graham-Wright had "not provided notice pursuant to Federal Rule of Criminal Procedure 12.2." R. 18 (Supplement to Mot. for Exam. at 1) (Page ID #28). Graham-Wright asserted that the basis for the district court's discretion to authorize a defense-only report was 18 U.S.C. §§ 4241(b) and 4242(a); yet, he acknowledged that neither statute discusses whether a report can be provided to the defense alone. Graham-Wright pressed that he was "entitled to such evaluation because his discussions during the examination will impact his Fifth Amendment right against self-incrimination." *Id.* at 2 (Page ID #29).

The district court denied Graham-Wright's request for a defense-only evaluation by a doctor of Graham-Wright's choosing but granted the motion "to the extent of ordering a psychiatric examination of Defendant under 18 U.S.C. § 4241 and § 4242." R. 20 (D. Ct. Order at 1) (Page ID #42). The district court explained that "[o]nce the

question of competence to proceed is even potentially at issue, as it now is in this case, the Court has its own independent interest in a professional evaluation of Defendant." *Id*. at 2 (Page ID #43). The district court recognized with regard to the issue of sanity that although "the formal trigger for a § 4242 criminal responsibility examination has not yet occurred because the defense has not filed formal notice of an intent to assert an insanity defense[,] . . . the issue is under consideration." *Id*. It went on to note that its order was "without prejudice to any request by [Graham-Wright] under 18 U.S.C. § 3006A for a psychiatric expert and assistance in evaluating and responding to the reports made under 18 U.S.C. §§ 4241-4242, if necessary." *Id*. The court explained further that such an evaluation "may be done locally, with the ensuing report sent only to defense counsel, just as any other § 3006A expert." *Id.* Thereafter, the district court ordered "that a psychiatric or psychological examination of defendant be conducted pursuant to 18 U.S.C. § 4241(b) and an examination on the question of sanity pursuant to 18 U.S.C. § 4242(a) and that a psychiatric report be filed in accordance with 18 U.S.C. § 4247(c)." R. 21 (D. Ct. Order of Commitment at 1) (Page ID #44).

Graham-Wright was taken to the Metropolitan Correctional Center ("MCC") in Chicago for an evaluation. At MCC,

> [Graham-Wright] was informed the usual doctor/patient relationship would not exist. He was told the information obtained from the evaluation was not confidential and would be summarized in a written report to the Court, with copies provided to both prosecuting and defense attorneys. He was also informed that staff from MCC Chicago could be subpoenaed at a later date to testify regarding his mental status. [Graham-Wright] acknowledged and appeared to understand this information.

R. 25 (Sealed Forensic Report at 1). When asked about his case during the evaluation, Graham-Wright requested to speak with his attorney before proceeding. MCC arranged for Graham-Wright to call his attorney. After speaking with his attorney, Graham-Wright agreed to discuss details of the alleged offense. *Id*. at 12. MCC prepared reports on Graham-Wright's competency and sanity (collectively "the report"), which were forwarded to Graham-Wright, the government, and the district court.

Several months after the MCC evaluation, Graham-Wright pleaded guilty, pursuant to a plea agreement, to one count of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e).  R. 41 (Plea Agreement) (Page ID #93–99).  Based on an offense level of forty-two and a criminal history category of I, the Presentence Investigation Report ("PSR") calculated Graham-Wright's Guidelines range to be 360 months to life imprisonment.  However, the recommended sentence under the Guidelines became 360 months of imprisonment because the offense carried a statutory maximum term of thirty years.  *See* 18 U.S.C. § 2251(e).

Graham-Wright did not object to the Guidelines calculation but did object to the PSR's inclusion of portions of the report prepared by MCC.  R. 48 (Objection to PSR at 1) (Page ID #124) ("Defendant objects to Paragraphs 69 and 70 in their entirety.  The inclusion of statements made by Defendant during the examination procedure violates Defendant's Fifth Amendment right against self-incrimination. *United States v. Nguyen*, 962 F.Supp. 1221 (N.D. Cal. 1997).  The inclusion of opinions based on the statements creates the same problem. *Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866 (1981).").  Graham-Wright later moved for a variance based on 18 U.S.C. § 3553(a) and elaborated further on his objection to the inclusion of portions of the report in the PSR (also clarifying that the objection was to paragraphs 69–71).  R. 52 (Mot. for Variance) (Page ID #162).  Graham-Wright requested that the entire report be attached as an appendix to the PSR if the district court overruled his objection to the inclusion of paragraphs 69–71.  R. 52-1 (Mem. in Support of Variance at 3) (Page ID #165).

The district court overruled Graham-Wright's objection to the inclusion of paragraphs 69–71 but decided that it would append the entire report to the PSR.  R. 59 (Sent'g Hr'g Tr. at 9–15) (Page ID #232–38).  The district court denied Graham-Wright's motion for a variance and imposed a sentence of 360 months of imprisonment. *Id.* at 34–43 (Page ID #257–66).  Relevant here, the district court noted that Graham-Wright "poses the maximum danger for recidivism" because of information contained in the report. *Id*. at 40 (Page ID #263).  Graham-Wright timely appealed, contending that the inclusion of the report in paragraphs 69–71 of the PSR violates his Fifth

Amendment right against self-incrimination and that his sentence is substantively unreasonable.

**II.**

In *Estelle v. Smith*, the Supreme Court explained:

> A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding. Because respondent did not voluntarily consent to the pretrial psychiatric examination after being informed of his right to remain silent and the possible use of his statements, the State could not rely on what he said to Dr. Grigson to establish his future dangerousness.

451 U.S. at 468. In *Buchanan v. Kentucky*, 483 U.S. 402 (1987), the Court made clear that this statement from *Estelle v. Smith*

> logically leads to another proposition:  if a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested. The defendant would have no Fifth Amendment privilege against the introduction of this psychiatric testimony by the prosecution.

*Buchanan*, 483 U.S. at 422–23. The Court went on to hold in *Buchanan* that "[t]he introduction of [a psychiatric evaluation] report for this limited rebuttal purpose does not constitute a Fifth Amendment violation." *Id*. at 423–24.

The observations from *Estelle v. Smith* and *Buchanan v. Kentucky* make clear that, when a defendant neither initiates/requests an evaluation nor presents any psychiatric evidence, the defendant retains the Fifth Amendment privilege against self-incrimination. In the present case, it is undisputed that Graham-Wright did not present any psychiatric evidence. Therefore, this case turns initially on whether the evaluation was requested or initiated by Graham-Wright; if so, the prosecution may use the report for a "limited rebuttal purpose." *Buchanan*, 483 U.S. at 423–24. Although typically this

determination should be straightforward, the confusion generated at the district court as to whose evaluation was ultimately conducted complicates the review of the record.

The facts before this court lead me to the conclusion that the report prepared under 18 U.S.C. § 4241 was not initiated or requested by Graham-Wright. Graham-Wright's attorney requested a defense-only evaluation by a private mental-health professional to determine whether there was a basis to assert that Graham-Wright was incompetent to stand trial or to raise an insanity defense. Although Graham-Wright's attorney referenced 18 U.S.C. § 4241, the record makes clear that the function of Graham-Wright's request was to receive a defense-only report and that the district court understood the request as such.[2] R. 60 (Mot. Hr'g Tr. at 7) (Page ID #280) ("[I]t would be a defense report that I'm asking for."); R. 18 (Supplement to Mot. for Exam. at 1–4) (Page ID #28–31); R. 20 (D. Ct. Order at 1–2) (Page ID #42–43) ("Defendant's Motion is DENIED to the extent it requests the examination be performed at the location of Defendant's current detention, by a psychiatrist of Defendant's choosing, and with disclosure of the reports to Defendant and his counsel only"). The district court denied Graham-Wright's request for a defense-only report and, instead, ordered an evaluation under § 4241 because "[o]nce the question of competence to proceed is even potentially at issue, as it now is in this case, the Court has its own independent interest in a professional evaluation of [Graham-Wright]." R. 20 (D. Ct. Order at 2) (Page ID #43). Thus, I believe that the evaluation was conducted pursuant to the district court's own interest in assuring that Graham-Wright was competent, which supplanted Graham-Wright's request for a defense-only report. *See* 18 U.S.C. § 4241.

The rationale behind the above-quoted passages from *Estelle v. Smith* and *Buchanan v. Kentucky* buttresses my conclusion: a defendant should not be permitted to rely in court on psychiatric evidence without the prosecution being permitted to rebut such evidence. The Court has described *Buchanan* as holding that "if a defendant requests a psychiatric examination in order to prove a mental-status defense, he waives

---

[2]The better practice, as acknowledged by the majority, would have been to request an expert under 18 U.S.C. § 3006A without reference to § 4241.

the right to raise a Fifth Amendment challenge to the prosecution's use of evidence obtained through that examination to rebut the defense." *Powell v. Texas*, 492 U.S. 680, 684 (1989).   In the present case, Graham-Wright's attorney did not "request[] a psychiatric examination in order to prove a mental-status defense"; instead, the examination was necessary to determine *whether* there was a basis for asserting incompetency or presenting a mental-status defense.  Such a request does not prompt the need for rebuttal evidence under *Buchanan*.  Simply put, Graham-Wright did not rely on psychiatric evidence, so there was nothing to rebut.  Our decision in *White v. Mitchell*, also reflects this rebuttal-purpose rationale. 431 F.3d 517, 537 (6th Cir. 2005) ("Because White initiated the psychiatric evaluation and because Dr. Sunbury's report was used on cross-examination for purposes of rebutting Dr. Smith's findings, the Court's ruling in *Estelle* [*v. Smith*] was not violated.").  Because the examination was court-ordered and Graham-Wright did not rely on the evaluation to prove incompetency or a mental-status defense, no rebuttal purpose was served by including the report in Graham-Wright's PSR.

Our inquiry under *Estelle v. Smith* also looks to whether Graham-Wright "voluntarily consent[ed] to the pretrial psychiatric examination after being informed of his right to remain silent and the possible use of his statements."  451 U.S. at 468.  The majority insists that "Graham-Wright freely submit[ted] to the examination" and that "his statements to the psychiatrist were voluntary."  I do not doubt that this was true; however, the evaluation was ordered to determine Graham-Wright's competency and sanity.  *Estelle v. Smith* underscores the importance of *Miranda*'s command that defendants be given "an awareness of the Fifth Amendment privilege *and the consequences of forgoing it*."  451 U.S. at 467 (emphasis added); *see Gibbs v. Frank*, 387 F.3d 268, 275 (3d Cir. 2004).  Here, Graham-Wright was not given a *Miranda* warning but was told that his statements "would be summarized in a written report to the Court."  R. 25 (Sealed Forensic Report at 1).  Presumably Graham-Wright and his attorney understood this to mean that the report would be given to the district court to use for the very purpose that the report was ordered and prepared:  to determine Graham-Wright's competency and sanity.  Thus, Graham-Wright's submission to the examination

was voluntary to the extent that it was for the purpose of determining his competency and sanity. These purposes are the consequence/possible use for which Graham-Wright was warned. Because the district court's actual use of the report was not limited to determining Graham-Wright's sanity and competency, its use violates Graham-Wright's Fifth Amendment right against self-incrimination. Therefore, I dissent.